CASE 16.—SUIT BY JACOB BORNSTEIN AGAINST THE
    LOUISVILLE SCHOOL BOARD, &c.—November 26,
    1909.

## Bornstein v. Louisville School Board, &c.

Appeal from Jefferson Circuit Court, Chancery
Branch (First Division).

SHACKELFORD MILLER, Judge.

From a judgment dismissing the petition, plaintiff
appeals.—Reversed.

1. Schools and School Districts—Contracts—Illegal Contracts—
   Remedies of Taxpayer.—A taxpayer could maintain an action
   as such to prevent the waste of the public school fund, or
   to prevent the school board from making a construction
   contract with one of its own members in violation of
   law.

2. Schools and School Districts—Contracts—Individual Interest
   of Officer—Validity.—Ky. St. Sec. 2975, provides that no
   person shall be eligible to the office of trustee of the public
   schools, who at the time of his election is directly or in-
   directly interested in any contract with the school board,
   or is in any way benefited by the appropriations of the
   board, and section 2976 vacates the office of any member
   of the school board who after election does or incurs any-
   thing which would have rendered him ineligible for elec-
   tion. Held, that the statute was simply declaratory of the
   common law, and made void contracts with the school board
   in which members thereof were interested, either directly
   or indirectly, so that a contract with a school board for the
   erection of a building, in which a member of the board was
   the real party interested, though it was made in the name
   of his cousin, was void.

3. Municipal Corporations—Contracts—Individual Interest of
   Officer—Evidence—Sufficiency.—In an action to enjoin the
   construction of a school building, on the ground that the
   contract was in fact made with a member of the school
   board, though nominally made with another, evidence held

to show that such member was interested in the contract, and that the bid was really made by him in another's name.

4. Municipal Corporations—Contracts — Invalidity — Effect.— Though a school building, constructed under a contract with a member of the school board, which was void for that reason, as in violation of Ky. St. sections 2975, 2976, was completed with money furnished by the board and was accepted by it, the parties to the transaction will not be permitted to profit from it, and the school board will be enjoined, in a suit by a taxpayer, from paying the amount not actually put into the building, and the costs of the suit adjudged against the nominal and the real contractor, and, if the whole contract price has been paid by the board, the nominal and the real contractor will be required to repay the amount not actually spent by them on the building to the board, with interest from the time of the last payment.

M. A., D. A. & J. G. SACHS for appellant.

WALLACE A. MACKAY and W. P. HILLSMAN for appellees.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

The Louisville school board adverstised for bids for the brickwork of the Duker Avenue school building, and it was specified in the advertisement that the bidders should state what they would charge if Louisville brick were used, and what they would charge additional if Akron brick were used. A number of bids were made for the work, among others one by Jacob Bornstein, in which he offered to do the work for $9,600, and there was added to the foot of his bid a statement that, if Akron brick were used, he would charge $40 per 1,000 additional. George Hoertz also made a bid in which he offered to do the work for $11,923 with Louisville brick, and a certain higher sum if Akron brick were used. John Hoertz was a member of the school board and also chairman

of the building committee.    When the bids were
opened, at the suggestion of the architect, Born-
stein's bid was thrown out as irregular because he
did not specify what he would charge if Akron brick
were used in a lump sum, but only stated that he
would charge $40 per 1,000 extra.    The committee
thereupon decided to use Louisville brick, and the
bid of George Hoertz was accepted, which was lower
than any other bid except the Bornstein bid, and this
had been thrown out.    The committee reported its
action to the school board, who approved the action
of the committee, and made a contract with George
Hoertz for the brickwork of the building.

Bornstein then brought this suit to enjoin the
school board from having the building constructed by
Hoertz upon the ground that the committee had ca-
priciously rejected his bid, although he was the low-
est and best bidder, and that the bid made in the
name of George Hoertz was in fact the bid of John
Hoertz, the chairman of the committee, and that the
school board was making a contract with one of its
own members for the building of the schoolhouse at
a higher price than the lowest and best bid, and was
thus wasting $2,323 of the school money.    The appli-
cation for a preliminary injunction was refused; an-
swers were filed.    On final hearing his petition was
dismissed, and he appeals.

Bornstein sued as a taxpayer, and as such he
might maintain an action to prevent the waste of the
school fund in which he was interested, or to prevent
the school board from making a contract with one of
its own members for the work.    He made the school
board, John Hoertz, and George Hoertz parties to
the petition.    The house was built pending the action,
and was about completed when the last depositions

were taken.  It is not easy to see on what ground the bid of Bornstein was rejected as irregular when it was decided to build the house of Louisville brick, for it was clearly stated in his bid that he would do the work for $9,600, and, after throwing out his bid, the board accepted the bid of George Hoertz for $11,-923.  Bornstein was a contractor in good standing. He was then just finishing another schoolhouse for the board, and it is hard to believe that, if these persons had been accepting bids to build a house for themselves, they would have thrown out a bid that was the lowest by $2,323, and then accepted the next higher bid, after they had determined not to use Akron brick; for, whatever defect there might have been in Bornstein's bid as to Akron brick, it was perfectly definite as to what he would charge if Louisville brick were used.

But, passing by this question, we come to the main question in the case: Was the bid made in the name of George Hoertz really made by John Hoertz, a member of the school board, and chairman of the building committee?  Sections 2975, 2976, Ky. St. (Russell's St. secs. 854, 855), among other things provide as follows:

"No person shall be eligible to this office who, at the time of his election, is directly or indirectly interested in any contract with the board, or who holds any office of trust, agency or salary with any corporation which holds any contract with the board, or who is any way benefited by the appropriations of the board; or whose father, son, brother, wife, daughter or sister is employed as teacher or as professor, or in any other capacity by said board, or in any of the public schools, or who is, directly or indirectly, in-

terested in the sale to the board of books, stationery, or other property."

"If, after election, any member of the board should become a candidate for nomination or for any office or agency, the holding and discharging of which would have rendered him ineligible before his election, or should he remove out of the district for which he was chosen, or should he do or incur anything which would have rendered him ineligible for election, or should any of the relatives above specified be employed by the board, his office shall become vacant and be filled as herein directed."

It will thus be seen that the statute makes any person who is directly or indirectly interested in any contract with the board ineligible for election, and declares that if after election he shall become directly or indirectly interested in any such contract his office shall become vacant. By section 2768 Ky. St. (Russell's St. sec. 556), members of the general council are forbidden to be directly or indirectly interested in any contract with the city, and under this provision it has been held that, if a member of the council is interested in any contract made with the city, the contract is void. Nunemacher v. Louisville, 98 Ky. 334, 32 S. W. 1091, 19 Ky. Law Rep. 933; Jacques v. Louisville, 32 Ky. Law Rep. 574; Bradley Gilbert Co. v. Jacques, 110 S. W. 836, 33 Ky. Law Rep. 618. Section 2768, Ky. St., provides no penalty for its violation, while section 2976 provides that the violation of its provisions shall vacate the office. The providing of this severe penalty shows that the Legislature intended to forbid the members of the school board from being interested directly or indirectly in the contracts made by it; and such contracts are no less

void in the case of a trustee than in the case of a
councilman. How then stands this case?

John Hoertz had been for 20 years a member of the
school board. During this whole time he had been
making contracts with the school board for the erec-
tion of buildings. He was a contractor by business.
For a while he made his contracts in the name of
one Neumeyer, who was his partner. After Neumey-
er's death, he made contracts in the name of others.
About two years before this he had built for the
school board in the name of this same George Hoertz
the Sylvia Avenue Schoolhouse. He had a son,
whom we shall call for distinction George, Jr., the
other George Hoertz, whom we shall call George,
Sr., being a cousin of his, 66 years old, living at
Beechmont, not known among the contractors of Lou-
isville as a contractor of brickwork, and who had
done no contracting of brickwork for himself in four
or five years except to remodel a house for his daugh-
ter-in-law. When the advertisement appeared for
the brickwork for the Duker Avenue Schoolhouse,
George, Jr., went to his father and asked him if he
was going to bid on the job; the father and son being
then partners in contracting. He and his son say
he told his son, "No," that since the new board had
come in they had agreed that no member of the board
should do any contracting, and George, Jr., then
went to see George, Sr., without, as he says, any sug-
gestion from his father. A bid was prepared, and
the name of George Hoertz, Sr., was signed to it by
John Hoertz. The proof as to the signature to this
bid leaves no doubt in our mind that this is the writ-
ing of John Hoertz. When this bid was accepted by
the committee, Bornstein began this proceeding, and

George Hoertz in person signed the contract which
was made with the school board, but he gave as his
surety on his bond the father-in-law of John Hoertz,
and George Hoertz, Jr., took entire charge of the
matter of building the schoolhouse.    He bought the
material, he employed the hands; George, Sr., paying
practically no attention to what was going on, and
giving the matter no supervision.    When estimates
were made upon the work, George, Sr., would go to
the school board and get the check, turn the check
over to John Hoertz, and John Hoertz cashed the
check.    George, Sr., put not a dollar in the building
and received not a dollar from it up to the time the
depositions in this case closed, and at that time the
school board had paid out upon it $9,000.    George,
Jr., testifies that he was by agreement with George,
Sr., the foreman of the building, and was to receive
$5.50 a day.    He also testifies that his father, when
he collected the checks, turned all the money over to
him and that he kept it in a drawer in his desk at
home until he paid it out on material or to the hands
as the work progressed.

When the depositions closed, there was something
over $2,000 still payable by the school board, and
there were some bills outstanding.    But, although
$9,000 had been collected, no account had been asked
by George Hoertz, Sr., of George Hoertz, Jr., and
none had been rendered him.    Before this work was
begun, John Hoertz and son had built some cottages
on Brook street with certain bricklayers.    They had
taken their force from there to C. T. Dearings, and
added a  story to his  printing establishment, and
these hands were taken from  there to the Duker
Avenue school building.    John Hoertz says that he
was doing nothing while George, Jr., was building

the schoolhouse, and that he merely cashed the checks for convenience of George, not retaining a dollar of the money or having any interest in the contract. While George Hoertz, Sr., was rarely about the building, John Hoertz was frequently there, often going as often as twice a day. After this schoolhouse was built, he did work for the school board in six small jobs amounting to $147, and put the voucher in the name of Joseph Kipp, having Kipp to recopy it so that it would appear in his handwriting; and, when the account was allowed, he had Kipp to sign the check and paid Kipp $5 for his trouble. This was after the agreement between the trustees not to be interested in any contracts made with the board, and after John Hoertz says he had determined not to be interested in any such contracts, and for that reason did not bid on the Duker Avenue School. While he and his son, George, and George Hoertz, Sr., all state that he had no interest in the Duker Avenue School contract, their testimony is very unsatisfactory taken as a whole.

George Hoertz, Sr., does not know who wrote the bid to the Louisville school board, does not remember if he signed it himself, does not know the dimensions of the building, did not have any bills for the material presented to him, does not know whether the bills were paid by cash or check, or how much material was used, or how many men worked on the building, or the names of any of the men, or the average pay roll, or when or where or how the men were paid off, or how much was paid for labor or material, or how much the time of his foreman came to. To say that a man who had undertaken a contract involving over $11,000 could be so ignorant about it as George Hoertz was, is to say either that he was lacking in

ordinary prudence or that he had for some reason no substantial interest in it; and that George Hoertz is a man of good sense is shown by his deposition. John Hoertz' testimony is inconsistent with the declarations made by him to disinterested parties whom he contradicts; and, in addition to this, his testimony lacks frankness, and has not the ring of a sincere desire to hold back nothing material to the controversy. To uphold such a transaction simply because interested parties say that John Hoertz was not interested in the contract would be in effect to hold the statute inoperative except where the parties confess to its violation. The statute is simply declaratory of a common-law rule, which lies at the basis of the proper administration of municipal affairs, and the court can not countenance evasions of it. To permit it to be evaded in such a way, as is shown by this record, would be to destroy it.

What, then, are the rights of the parties? The house was built with money furnished by the school board. It has been accepted by the board, and, though the contract was void, the money of the board went into the house, and the board has the house. But the court will not allow either of the parties who were parties to the transaction with the school board to make a profit out of it. And we are satisfied from the record that the money paid by the board did not go into the house at least to the amount of $2,300. Under the evidence, the circuit court should have entered a judgment enjoining the school board from paying to George Hoertz, Sr., $2,300 of the contract price, and adjudging John Hoertz and George Hoertz, Sr., to pay the cost of the action. If, on the return of the case to the circuit court, it shall appear that the whole contract price for the schoolhouse has

been paid, the circuit court will enter a judgment adjudging John Hoertz and George Hoertz, Sr., to pay to the school board $2,300 with interest from the time the last payment was made.

Judgment reversed and cause remanded for a judgment, and further proceedings consistent herewith.