# Trustees of Princeton Graded Common Schools, et al. v. Stone.

(Decided March 14, 1911.)

## Appeal from Caldwell Circuit Court.

1. Graded Common Schools—Fourth Class Cities.—A city of the fourth class may by vote of the people establish a graded common school in lieu of the school provided for by the act governing cities of the fourth class.

2. Election Ordered.—An election for this purpose may be ordered by the mayor, the order being directed to the sheriff and the officers of election being appointed by the sheriff.

3. Boundary—Outside the City.—When the city has established a graded common school by an election held for that purpose, the boundary of the district may be extended so as to take in territory outside the boundary of the city.

4. Finding of Trustees—Annexation—Presumption.—Where the trustees make a finding that a majority of the legal voters have consented to the annexation of the territory, the presumption is that they did their duty, and that their finding is correct.

R. W. LISANBY for appellants.

HODGE & HODGE and S. D. HODGE for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Reversing.

Princeton is a city of the fourth class. The public schools in cities of the fourth class, when regulated by the act for the government of these cities, are governed by sections 3588-3606, Kentucky Statutes, and under these provisions the school district must cover the same territory as the city boundary. But the same General Assembly which passed the law governing cities of the fourth class also passed an act providing for graded common schools. (See Ky. St., 4464-4500.) By section 4489 it is provided that any city of the first, second, third or fourth class may accept the provisions of the act and establish graded common schools subject thereto, at an election held for that purpose. Pursuant to this section, the city of Princeton on June 18, 1908, held an election at which the majority voted to accept the provisions of the act and establish a graded common school thereunder. Afterward on October 20, 1908, they held another election at which they elected trustees pursuant to the

act, and voted a tax not exceeding fifty cents on each one hundred dollars worth of property. The tax was voted by a large majority. The city thus had a graded school established in the city under the graded school act. Among other provisions governing graded common schools is section 4464b, a provision introduced into the statute by the act of March, 1906:

"Any graded common school district organized and existing under any special act of the Legislature, and any such district that has been or may be hereafter organized under the general laws of this State, may, by and with the written consent of a majority of the legal voters in the territory to be added, extend the limits of such district so as to include such additional territory as the Board of Education, or trustees of such district, may desire to take within the limits and add to such district."

Under this statute, the school trustees, as they found, with the written consent of a majority of the legal voters in the territory, extended the limits of the district so as to include territory outside of the city boundary, and levied a tax to carry on the school. W. O. Stone, who was a taxpayer in the territory thus added, suing for himself and the other taxpayers situated like him, brought this suit to enjoin the collection of the tax, on the ground that under the statute the boundary of the school district could not be extended beyond the city boundary; that the elections referred to were not properly held and were void; that a majority of the legal voters therein had not consented that the territory should be added. The circuit court granted a preliminary injunction, which was discharged by a judge of this court. The case then being prepared, the circuit court granted a perpetual injunction as prayed in the petition. The trustees appeal.

So long as the school remained under sections 3588-3606, Ky. St., and was a school maintained under the act for the government of cities of the fourth class, the boundary of the district was limited to the boundary of the city; but the Legislature, foreseeing that this might not in all cases be to the interest of the common schools, provided in the act authorizing the establishing of graded common schools that any of these cities might by a majority vote accept the provisions of that act and estab-

lish its school thereunder; the plain purpose being to give the city the choice of having a school under the act governing cities of the fourth class or having it under the act governing graded common schools. When the city voted to have its school under the graded school act, and voted the tax under this act, the graded school so established is simply a graded common school, and stands like any other graded common school in the State. Like any other graded common school, it may extend its boundary and take in other territory in the manner provided by the act. In Bailey v. Figely, 106 Ky., 726, the city had not by a majority vote determined to establish its school under the graded school act. The city school was established there under the act for the government of cities of the fourth class. In Read v. Smith, 32 R., 716, the question was not before the court as Hodgenville is a town of the fifth class. The question here presented was not presented there.

We are unable to see that there was any irregularity in holding the election. Section 4489 provides among other things that the mayor shall in such cases perform all the duties required of the county judge in carrying into effect the provisions of the law, and that the election shall be held by the officer whose duty it is to hold other city elections. The mayor made the order for the election just as the county judge is authorized to do in other elections by section 4464, Ky. St. That section provides that the county judge shall make an order directing the sheriff or other officer whose duty it is to hold the election, to open a poll, etc. Section 4467 provides "the said sheriff or other officer shall appoint a judge and a clerk of the said election." There is no officer in the cities of the fourth class whose duty under the act it is to conduct elections. The sheriff of the county is required by section 1467, Ky. St., to provide booths in each voting place and also the ballot boxes; he is required to notify election officers of their appointment, to provide for the holding of special elections, to give notice thereof, and in our statutes it has been customary for writs of elections to be issued to the sheriff. The mayor properly directed his order to the sheriff, as there was no other officer on whom was imposed the duty of holding such an election. The officers appointed to hold the election have acted and have made their returns without question.

Both of the two foregoing questions were before us when the case was before Judge Barker on the motion to dissolve the temporary injunction, and upon a reconsideration of the matter, we see no reason for changing the conclusion we then reached. The remaining question in the case is, Did a majority of the legal voters in the territory which was added, consent to its being added to the district? This question is now here for the first time. The order of the trustees shows that a petition was presented to them containing the names of 36 legal voters consenting to the annexation. The petition is lost and the entry of the names on the book of the trustees shows only 29 names. We have thus the recitals in the order that there were 36 names, when in fact there are copied in the record only 29. A number of witnesses testify to counting the names and that there were 36. We must, therefore, presume that there was simply an error in copying the names in the order book of the trustees. The order itself shows that there were 36 names, and the proof that there were 36 names on the petition is made by a number of unimpeached witnesses. It was not necessary that the order book of the trustees should set out the names of the persons who consented to the annexation, and the fact that some who consented were by mistake omitted from the entry does not vitiate the order. The facts may be shown. It appears from the proof that four of the signers were widows, who owned property and had children but they were not legal voters under section 4489, Ky. St., and cannot be counted. It also appears that there were three signers who owned property in the territory but did not live there, and one who had not lived there a year since he returned from Kansas. Subtracting these eight names from the 36 we have 28 legal voters who consented to the annexation. Appellee alleged there were 45 legal voters in the territory who did not consent to the annexation. We have carefully gone over the proof and conclude that 20 of these persons were not legal voters. To be a legal voter a man must have resided in the State one year, in the county six months, and in the precinct in which he offers to vote sixty days next preceding the election. There are some of the remaining 25 who are not shown to have resided in the State one year, in the county six months, and in the precinct sixty days. One witness who seems to know the territory very well, says there were 51

legal voters in the territory and we think this is about right. As there were twenty-eight who consented to the annexation, there was a clear majority for it. The school board found as a fact that the majority of the legal voters had consented to the annexation of the territory; while this finding is not conclusive, it is presumed that the officers did their duty, and on the whole case we cannot say that the evidence is sufficient to overthrow their finding.

Judgment reversed and cause remanded, with directions to dismiss the petition.