# Board of Education of Hopkins County v. Givens, et al.

(Decided April 23, 1912.)

## Appeal from Hopkins Circuit Court.

1.  Schools—Taxation—Fiscal Court—Board of Education.—Where the fiscal court laid a levy at the request of the Board of Education of the county for the benefit of the schools of the county, exclusive of graded schools, the subsequent extension of the boundary of a graded school district and the levy of a tax for the benefit of the graded school in the graded school district including the annexed territory, did not have the effect of defeating or superseding the previous levy made by the fiscal court, and property and persons in the annexed territory were not subject to the graded school tax for the current year.

2.  Schools—Taxation—Fiscal Court.—The trustees of a graded school district, and the fiscal court, are independent taxing authorities. Each has the power to impose both a property and a poll tax, but both cannot impose it upon the same persons and property for the same year.

3.  Schools—Repeal of Statute.—Kentucky Statutes, sections 4464 and 4464b.—So much of section 4464 of the Kentucky Statutes as is in conflict with section 4464b of the Kentucky Statutes is repealed.

H. F. S. BAILEY and YOST & LAFOON for appellant.

TEAGUE & FRANKLIN and GIBSON & KINCHELOE for appellees.

Opinion of the Court by Judge Carroll—Reversing.

On May 30, 1911, the trustees of the Madisonville Graded School extended the school district boundary in the manner provided in section 4464b of the Kentucky Statutes, and on the same date levied a property tax of fifty cents on all of the property in the graded school district as extended and a poll tax of $1.50 on each white male inhabitant of the district.

Prior to May 30, 1911, the Fiscal Court of Hopkins county at the instance of the Board of Education of that county and under the authority of Section 4426a, subsection 9, of the Kentucky Statutes, had levied for 1911 a property tax of 16 2-3 cents and a poll tax of $1.00 on property and persons for the benefit of the common schools of Hopkins county. The property and persons in the annexed territory being at the time the Fiscal Court laid the levy proper subjects of taxation by the Fiscal Court for common school purposes.

The question presented in this case is—should the property and persons in the annexed territory be taxed in 1911 for the benefit of the graded school under the levy made by its trustees or taxed under the levy made by the Fiscal Court for common school purposes.

The lower court ruled that the persons and property in the annexed territory should be taxed under the levy made by the trustees of the graded school, and of this ruling some taxpayers and the Board of Education complain.

At the time the Fiscal Court laid the levy at the instance and request of the Board of Education of the county for the benefit of the schools of the county, exclusive of graded schools, the property and persons in the annexed territory were subject to the tax laid by the Fiscal Court; and, we think the subsequent extension of the boundary of the graded school district and the levy of the tax for the benefit of the graded school in the graded school boundary including the annexed territory did not have the effect of defeating, or rather superseding, the previous levy made by the Fiscal Court. The Fiscal Court at the instance of the Board of Education is only authorized to lay a levy for the benefit of the common schools of the county upon the property and persons that are not included within graded school districts, and it is of course important that both the Board of Education and the Fiscal Court should know when this levy

is made what property and persons will be subject to the tax imposed. By making some calculations as to the value of the property and the number of persons within graded school district boundaries, the Fiscal Court and the Board of Education can tell approximately the amount of property and the number of persons that will be subject to the tax imposed. But if the extension of the boundary of graded school districts after the Fiscal Court acts would have the effect of exempting from the tax levied by the Fiscal Court the property in the extended territory, it would of course lessen the amount of property and the number of persons subject to taxation under the levy made by the Fiscal Court and decrease the amount of money the levy made would raise for common school purposes. Assuming that the levy made by the Fiscal Court for common school purposes was needed for this purpose by the Board of Education, it is apparent that the diminution of this sum by the exemption of property and persons subsequently added to graded school districts would confuse and disarrange the plans of the Board of Education and impair to some extent at least its efficiency. Of course, the persons and property in territory annexed to a graded school should not for the same year be required to pay a school tax under a levy made by the Fiscal Court and also a school tax under a levy made by the graded school district. The trustees of the graded school district, and the Fiscal Court, are independent taxing authorities. Each has the power to impose both a property and a poll tax, but both cannot impose it upon the same persons and property for the same year. We think, therefore, that when the Fiscal Court, as in this case, has made its levy for educational purposes, all the property and persons subject to the tax at the time it is levied must pay the same under the levy made by the Fiscal Court, and that new graded schools cannot be established or the boundary in existing graded schools extended so as to defeat for the current year the collection of the tax laid by the Fiscal Court. In other words, the status for school taxation for the current year of persons and property subject to the tax laid by the Fiscal Court at the instance of the Board of Education for common school purposes is fixed by the date of the levy and all property and persons that are subject to the tax at the time it is levied by the Fiscal Court must pay under its levy. It is insisted however that this construction will permit persons living in the

extended boundary to enjoy the benefits of the graded
school after the extension of the boundary made without
subjecting them to the tax levied for the current year for
graded school purposes. But this inequality cannot well
be avoided without creating other conditions more un-
equal and unfair.

Other reasons than the one we have assigned are pre-
sented by counsel in support of the proposition that prop-
erty and persons in the extended territory should not be
required to pay a graded school tax for the current year;
but, in view of the fact that there are many apparently
conflicting provisions in the common school laws of the
State, we do not think it advisable to do more in any par-
ticular case than decide the question that controls it, leav-
ing for other cases questions involving the construction
of other sections of the Statute, although they may have
some bearing upon the case decided. We may add, how-
ever, that the contention of counsel for appellant that it
is necessary that the County Judge should consent to
the extension of the graded school boundary, which it
does not appear he did in this case, is not well taken.
Section 4464 of the Kentucky Statutes provides in part
that:

"If at any time, two years having intervened since
such graded common school district was established, it
becomes desirable to change the boundary of the same,
it shall be the duty of the county judge, upon a written
petition signed by the person or persons desiring to be
changed, who are, under this law, legal voters in the
school district or districts in which they reside and who
at the same time own the real estate sought to be trans-
ferred, to make an order on his order-book at the next
regular term of his court after receiving said petition
fixing the new boundary of the said graded common
school district as agreed on by the county judge and
the petitioners. * * * "

But the method provided in this section for the ex-
tension of graded school districts was changed by a sub-
sequent act, now section 4464b of the Kentucky Statutes,
which provides in substance that the trustees of graded
common school districts may extend the limits of the dis-
trict by the written consent of a majority of the legal
voters of the territory to be added. This new act pro-
vides a distinctly different method by which the bound-
ary of graded school districts may be extended from
that pointed out in scetion 4464, and we think it must be

treated as repealing section 4464 to the extent that there is conflict between the two acts.

The judgment of the lower court is reversed, with directions to enter a judgment in conformity with this opinion.