# Payne, et al. v. Providence Graded Common School District, et al.

(Decided February 6, 1917.)

## Appeal from Webster Circuit Court.

1. Schools and School Districts—School Elections—Registration of Voters at.—At special elections held under the general graded common school laws of the State for the purpose of establishing a graded school or to vote bonds or taxes in aid of the school, the voters are not required to be registered as a pre-requisite to voting, although many of them may live in a city where registration is required.

2. Schools and School Districts—School Elections—Registration of Voters at.—At school elections held on regular election days or under charter provisions in cities or towns where registration is required, registration is a pre-requisite to voting, both by women and men.

3. Contracts—Validity of Contract Between Member of School Board and School Board.—A contract affecting property rights made by a member of the school board with the school board is void.

4. Schools and School Districts—Graded Schools—Notice of Election—Who Must Sign.—Notices calling a special election for the purpose of voting bonds in a graded school district will be sufficient if signed by some member of the board who has been authorized by the board to sign the notices. If the notices are signed by the president or secretary, it will be presumed that the election was ordered by the board and that these officers had the authority, either or both of them, to sign the notices calling the election.

HUNT & BENNETT for appellants.

CANNADAY & WITHERS for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This suit was brought by some taxpayers living in the Providence Graded Common School District against the trustees of the graded school in the district to enjoin the issual of bonds authorized to be issued by a vote of the people in the district for the purpose of providing grounds, building and apparatus for the purpose of maintaining a school. The election was held on Saturday, March 18, 1916, and 477 votes were cast at the election, 343 being in favor of the bond issue and 134 against it. A general demurrer was filed to the petition and

sustained, and from the order dismissing the petition the taxpayers appeal.

The grounds upon which the validity of the election is assailed are: (a) that 115 women voted in favor of the bond issue, although none of them, it is alleged, were eligible to vote, because they were residents of the city of Providence, a city of the fourth class, and none of them had registered at any regular or special registration held in the year for which the election was called; (b) that the board of trustees in calling the election did not provide for a special registration for the voters residing in the city of Providence; (c) that the officers did not require any person offering to vote at the election to produce or exhibit his certificate of registration, nor did any of the voters produce or exhibit their papers; (d) that J. E. Morgan, president of the board, owned the land upon which the trustees proposed to erect the building; (e) that the notices calling the election were signed only by Morgan, the president, and Robards, the secretary of the board, and not by all the members of the board.

(1) In reference to the failure of the voters to register at this election, we do not think registration was required. In section 147 of the constitution provision is made for the registration of voters in certain cities and towns, and where registration is required, only persons registering have the right to vote. Other sections of the constitution from 145 to 154, inclusive, relate to and regulate the matter of suffrage and elections; but section 155 provides that: "The provisions of sections 145 to 154, inclusive, shall not apply to the election of school trustees and other common school district elections. Said elections shall be regulated by the General Assembly, except as otherwise provided in this constitution." Therefore, in determining whether voters in school elections of any kind are required to register, we must look to the statute for the purpose of ascertaining what provision has been made upon the subject of the registration of voters.

In section 4535h of the Kentucky Statutes it is provided that women possessing certain prescribed qualifications may vote at all elections "of school trustees and other school officers required to be elected by the people, and upon all school measures or questions submitted to a vote of the people." And under this legislative au-

thority it was held in Crook v. Bartlett, 155 Ky. 305, that women might vote in county elections for candidates for superintendent of common schools in the county; and in Stuessy v. City of Louisville, 156 Ky. 523, it was further said that under this statute women were entitled to vote at any election involving school affairs.

This section of the statutes further provides, in subsection 2: "In all places where a registration of the qualified voters is now or may hereafter be required, women who are, by this act, qualified to vote shall be registered at the same time and place and by the same officers and in the same manner as male voters; their registration, however, being made in a separate book to be furnished by the county clerk, as is prescribed by law in the case of male voters. And all the provisions of law relating to the registration of male voters are hereby made applicable to the registration of women qualified to vote by this act." And in section 1550, subsection 17a, provision is made for the special registration of women who desire to vote at a general election where school officers are to be voted for or school questions are to be voted upon.

It will thus be seen that the statute provides for the registration of women who desire to vote in elections concerning schools when registration would be a pre-requisite to men voting at such elections.

The question then recurs, are these statutes requiring the registration of women applicable to all classes of elections affecting schools, or limited to certain classes, and if so, in what classes of elections is registration required as a pre-requisite to vote, and in what classes of elections is registration not required as a pre-requisite to vote? There are certain elections affecting school matters that must be held on the regular election day and by the officers provided for the conduct of regular elections. For example, the superintendent of common schools must be elected at the election held on the regular election day, and in the charters of certain cities there are provisions requiring that elections affecting school matters must be held on a regular election day.

There are also a great many elections affecting the schools that are not required to be held on the regular election day but may be held on any day at a special election called for the purpose by the governing authorities of the school affected. In this class may be placed

elections for the establishment of graded schools under the general school laws, or to vote bonds or taxes in aid of graded schools or common schools under the general laws. These special elections under the general laws at which trustees of schools are elected, or taxes voted, or bonds authorized to be issued, or graded schools established, are all *viva voce* elections free from the strictness and formality that attend the conduct of regular elections.

The legislation on the subject of public school elections and the requirements of registration therefor, on account of its piecemeal character, largely due to its enactment at different times, is somewhat confusing, but we think it was not intended to require registration for either men or women as a pre-requiste to vote at a special election called on a day other than the general election day for the purpose of establishing a graded school under the general school laws or to vote bonds or taxes in aid of graded or common schools under the general school laws of the state that may be found in the statute; although when a school election is held in a town or city not under the general school laws of the state, but under the charter provisions of the city or town in which the election is held, and only residents of the city or town are entitled to vote at such election, both men and women must be registered voters before they can be permitted to vote at such an election.

Having this view of the matter, the registration of voters was not a pre-requisite to vote in this election, which was a special election called and held under the general school laws of the state. Whether the graded school district was confined to the corporate limits of the city of Providence, or embraced territory outside the corporate limits, is not material, because cities like Providence may at their option establish their educational system under the general school laws of the state or under their charter provisions, and when their educational system is under the general school laws of the state and not the charter provisions governing the city, registration of voters is not required, although the district may be confined exclusively to the corporate limits. Trustees Princeton Graded School v. Stone, 142 Ky. 715; Bailey v. Figely, 106 Ky. 725; Taylor v. Russell, 117 Ky. 539; Bowman v. City of Middlesboro, 28 Ky. Law Rep. 1290.

(2)    The allegation in the petition as to Morgan, the president of the board of trustees, being the owner of the land upon which the proposed school building should be erected, is that the building "would be erected upon the land owned by the defendant, J. E. Morgan, if it can be obtained at a reasonable price. If not, then on some other equally suitable and convenient location." The suggestion of counsel for appellants upon this point is that it was unlawful for Morgan as a member of the board of trustees to contract with the school board for a sale of the lot owned by him, and as the board of trustees proposed to purchase and might purchase from him a lot upon which to erect a school building, in the erection of which the money or some part of it raised by the bond issue would be expended, this fact rendered the election void.

It may be conceded without expressing any opinion on the subject—as the question is not here—that the board of trustees would not have the right to purchase from Morgan, a member of the board, a lot upon which to erect a school building; but, clearly, the mere fact that the trustees might or would purchase from Morgan the lot could not affect the validity of the election. If any taxpayer of the district desires to question the right of the board to purchase this lot from Morgan, he may do so in a suit brought for that purpose. Bornstein v. Louisville School Board, 137 Ky. 108.

(3)    Section 4481 of the Kentucky Statutes provides that notice of an election to be held for the purpose of voting bonds like those proposed to be issued in this case "shall be given by the trustees of their respective districts, by written or printed posters not less than one foot square, signed by the trustees of their respective districts." But this statute does not require that all of the trustees shall sign the notices. It will be sufficient if the notices are signed by some member of the board who presumably acts with the authority of the board, as, for example, the president of the board or the secretary of the board, and both of these officers of the board signed the notices calling this election. Of course the election must be ordered by a majority of the board and held under its direction and authority. The notices are merely for the purpose of informing the people of the time when and the place where and the hours between which the election will be held. If the notices are signed by the president or the secretary, it will be presumed that the

election was ordered by the board and that these officers had the right, either or both of them, to sign the notices calling the election. Lamaster v. Wilkerson, 143 Ky. 226.

Wherefore, the judgment is affirmed.