## Dean et al. v. Board of Education of Harrodsburg.
## Board of Education of Harrodsburg v. Shirley et al.

(Decided Feb. 3, 1933.)

554

CHAS. S. MATHERLY, F. DOUGLASS CURRY and HENRY JACKSON for appellants Emily Jane Dean et al.

ROY E. GRAVES, R. L. BLACK, MATHERLY & CURRY, C. C. BAGBY, for appellants Geo. W. Shirley et al.

C. E. RANKIN for Board of Education of Harrodsburg.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN —Affirming in part and Reversing in part.

This is a declaratory judgment suit brought for the purposes of determining the boundary lines of the school district known as the Harrodsburg educational district. The district contended that it embraced not only the city of Harrodsburg, but also a considerable territory outside of but adjacent to and surrounding the city limits. The people within this territory outside the city limits contended that the boundaries of the district were confined to the corporate limits of Harrodsburg. The lower court held that the boundaries of the district extended beyond the corporate limits of Harrodsburg, and took in some surrounding territory, but not to the extent claimed by the board of education. From this judgment, both sides have appealed.

A proper decision of this case requires an extended investigation into the various acts of the Legislature passed since the Harrodsburg educational district was established, and we must begin with the act creating that district. That act was chapter 745 of the Loc. & Priv. Acts of 1875-76, section 1 of which reads:

"That for the purpose of establishing a graded system of free schools in Harrodsburg, Kentucky, the said town of Harrodsburg is hereby constituted a common school district, and declared to be a body-corporate, and possessing all powers necessary for the execution of the purposes hereinafter set forth. Its corporate name shall be known as the Harrodsburg Educational District."

Thus we see that, at the outset, the boundaries of the Harrodsburg educational district were coincident with the corporate limits of the town. The act creating the district contained no provision for thereafter enlarging the boundaries of the district. A patient investigation by both counsel and the court has disclosed no act bearing on our problem until chapter 260 of the Acts of 1891-92-93 was passed on July 6, 1893. That act, in accordance with the mandate of our present Constitution then but recently adopted, provided for a sys-

tem of common schools throughout the state. It was composed of fifteen articles. Article 7, as section 65 thereof clearly indicates, related to the common school districts of the county as distinguished from graded school districts, and therefore section 67 of the same article, which provides:

"The county superintendent shall, in a book to be kept in his office for that purpose, and subject to public inspection, describe each district in his county by its number and boundary, and shall furnish to the trustees of each district a description of the boundary thereof"—has reference to the common school districts of the county, and has no bearing on the graded school districts. Article 10 of chapter 260 provided for the establishment of graded school districts. This article begins with section 100, which later became section 4464 of the Kentucky Statutes, Edition of 1894, and subsequent editions. This section provided for the establishment of graded school districts in towns and cities of the fifth and sixth classes and in rural districts, but made no provision for the extension of boundaries of graded school districts established pursuant to its provisions. Section 124 of that act provided:

"The provisions of this article shall not affect, or in any way interfere with, any graded common school or schools maintained by any city of the fifth or sixth class, or any town or school district organized by virtue of a special act of the General Assembly, unless the said city, town or district shall, by a majority vote, indorsed by the recorded action of the board of trustees, accept the provisions of this article for the government of the said school or schools in any election held under the written order of the county judge, or of the mayor of said city, in the manner."

And here follows the method of taking the vote of the electors of the graded school district.

This section became section 4488 of the Kentucky Statutes of 1894. Section 125 of chapter 260, which became section 4489 of the Kentucky Statutes of 1894, provided:

"The provisions of this article shall not affect, or in any way interfere with, any system of graded

common schools established and maintained by any city of the first, second, third or fourth class, by virtue of a general or special act of the General Assembly. Any city of the first, second, third or fourth class may accept the provisions of this law, and establish graded common schools, subject to all the provisions thereof,'' in the manner set out by the statute.

We thus see that for graded school districts established by a special act of the General Assembly to come under the graded school law set up by this chapter 260, there had to be taken a vote of the electors which had to result in favor of the district being governed by these general graded school laws of the state. At this point we may pause to note that this same Legislature which enacted this chapter 260, and which was the first Legislature that met after the adoption of the present Constitution, by an act adopted September 30, 1892 (Acts 1891-92-93, c. 99), assigned the various towns and cities of this commonwealth to the classes set up by the Constitution; Harrodsburg being assigned to the cities of the fourth class. This Legislature also provided charters for the various classes of cities. For cities of the fourth class, of which Harrodsburg was one, a system of public schools was authorized. See sections 3588 to 3606, Kentucky Statutes of 1894. The provisions for this system did not permit of the school district thus authorized extending beyond the boundaries of the city. The act itself clearly provided that in order for a city of the fourth class to avail itself of the right to establish a school system under these provisions of its charter, the board of councilmen of the city had to determine to do so by ordinance. See section 3606, Kentucky Statutes of 1894. In the case of Taylor v. Russell, 117 Ky. 539, 78 S. W. 411, 25 Ky. Law Rep. 1652, this court held that the authority vested in cities of the fourth class by section 4489, Kentucky Statutes, 1894 Edition, to establish schools under the general graded school laws of the state did not empower such cities which had established schools under the charter provisions of municipalities of the fourth class relating to a public school system to change from these charter provisions schools to graded schools under the general school laws. It is true the case of Trustees of Princeton Graded Common Schools v. Stone, 142 Ky. 715, 135 S. W. 307, which makes no reference to the Taylor Case,

supra, is on this point diametrically opposed to the rule announced in the Taylor Case, and both cases cannot stand. But it will not be necessary in this case to decide which case lays down the proper rule. It is sufficient to note the conflict. At all events, both cases recognize that a fourth-class city might then have its schools conducted either because of a special law passed before the adoption of the present constitution organizing the schools of such city, or because of the general graded school laws of the state, or because of the charter provisions relating to the subject of cities of that class.

Continuing with the historical inquiry of our subject, we find that by chapter 25 of the Acts of 1897, passed at the Special Session of the General Assembly held that year, section 100 of Chapter 260 of the Acts of 1891-92-93 was amended. This amendment simply provided that at the end of two years after the establishment of a graded common school district pursuant to the provisions of section 100 which we have noted above, the boundaries might be extended upon a written petition signed by the person or persons desiring to be changed from the county school system to the graded school system. The petition had to be filed with the board of education of the graded common school district, and had to be approved by it as well as by the county superintendent. There were other provisions necessary to be complied with in order to extend the boundaries. The last sentence of this amendment of 1897 in part reads:

> "The provisions of this act, under like conditions and restrictions, touching change of boundary, shall apply equally to changes in boundary of districts heretofore established by local or special law, which incorporates any city, town or village as one district."

See section 4464, Kentucky Statutes, 1899 Edition. It will be remembered that by sections 124 and 125 of chapter 260 of the Acts of 1891-92-93, all graded schools, no matter where located, that had been created by a special act of the Legislature prior to the adoption of our present Constitution, were excluded from the provisions of article 10 dealing with graded common schools, which article began with section 100, unless such graded common schools so established by special

act elected by the vote provided for in those sections to come under the provisions of article 10. Section 100 of chapter 260, as held in the case of Bailey v. Figely, 106 Ky. 725, 51 S. W. 424, 426, 21 Ky. Law Rep. 341, dealt only with the establishment of graded schools in rural communities and cities of the fifth and sixth classes; these classes of cities having no charter provisions for the establishment of graded schools. In that case this court said:

> "We think it was the purpose of the statute to draw a sharp distinction between graded schools located in the country and small villages and towns of the state, and the larger cities, and that it was intended that these larger communities should have schools confined to their own limits, and that their control should be vested in officials selected by the voters of their city."

It is therefore apparent that the concluding provisions of the amendment of 1897 (Acts 1897, Sp. Sess., c. 25) had reference only to graded schools in fifth and sixth class towns and rural districts that had been established by local or special laws and which had not by a vote taken pursuant to the requirements of section 124 of chapter 260 of the Acts of 1891-92-93 elected to come within the graded school laws of the state. The amendment itself says that its provisions "under like conditions and restrictions, touching change of boundary," should apply to schools theretofore established by local or special laws, and when we look to see what the conditions and restrictions touching change of boundary were referred to, we find that it refers to the graded common school districts described in the earlier part of that amendment, and which were, as the Bailey Case held, schools in cities of the fifth and sixth class and rural districts. In 1906, by chapter 88 of the Acts of that year, which chapter later became section 4464b of the Kentucky Statutes, Edition of 1909, it was provided:

> "Any graded common school district organized and existing under any special act of the legislature, and any such district that has been or may be hereafter organized under the general laws of this State, may, by and with the written consent of a majority of the legal voters in the territory to be added, extend the limits of such district so as to in-

clude such additional territory as the Board of Education, or trustees of such district, may desire to take within the limits and add to such district."

In the case of Board of Education of Hopkins County v. Givens, 147 Ky. 837, 146 S. W. 16, it was held that to the extent of conflict, section 4464b repealed the provisions of section 4464 of the Statutes; the latter section being, as it will be recalled, section 100 of chapter 260 of the Acts of 1891-92-93, as amended by the act of 1897. By chapter 64 of the Acts of 1914, this 1906 act, that is, section 4464b of the 1909 Edition of the Statutes, was repealed and section 4464 was amended. As amended, there was a provision for extending or decreasing the boundaries of graded common schools established under the provisions of that section. But the provision found in the amendment of 1897 and relating to graded schools established by local or special law was dropped from the section. This section 4464, as so amended by the Act of 1914, may be found in the 1915 Edition of the Statutes. In 1916 (Acts 1916, c. 24) the Legislature undertook to recodify the school laws of the state, but section 4464 remained unchanged from the form in which it was found after the 1914 amendment. Sections 4488 and 4489 of the older editions of the Statutes became, in this 1916 recodification, sections 4468a-2 and 4468a-3 of the 1918 Supplement to the 1915 Edition of the Statutes. They retained these later numbers in the 1922 Edition of the Statutes. In 1916, the charters of the cities of the fourth class were amplified by providing for an optional commission form of government for its schools, but it was distinctly provided by that act (chapter 59, Acts of 1916) that such optional form should not become effective in such cities until the voters of any such city had by vote agreed to be governed thereby. Section 3587a-36, Kentucky Statutes, 1918 Supplement. Chapter 14 of the Acts of 1920 in substance re-enacted this optional system of 1916 as the only charter system for schools in cities of the fourth class; the old system theretofore contained in sections 3588 and 3606 of the Statutes being repealed.

Section 1 of the 1920 Act, which became section 3587a-1 of the 1922 and subsequent editions of the Statutes, in part provided:

"Each city of the fourth class in this state, together with the territory now within its limits, in-

cluding any territory which has heretofore been added for school purposes outside the limits of said city and any territory which may be in the future included by any change in the limits of such cities, or such territory as may be added in the manner as hereinafter set out in § 3587a-31, shall be and constitute a single school district, and the supervision and government of common schools and common school property therein shall be vested in a board of six trustees to be called and known as the 'Board of Education of ———, Kentucky.'"

Section 9 of the Act (Ky. Stats., sec. 3587a-9), so far as pertinent, read:

"Upon this law going into effect where systems of public schools have been maintained embracing cities of the fourth class under laws in force in the state of Kentucky, whether by special charters or general laws, such schools shall automatically come under the provisions of this law."

Thus in 1920 the possibilities of a city of the fourth class having a system of schools under a local or special act or under the general graded school laws or under the old charter provisions of cities of the fourth class were swept away, and thereafter all schools maintained in cities of the fourth class were governed by this act of 1920.

From this historical resume, it is quite apparent that it is affirmatively established that until the act of 1906, the Harrodsburg educational district was without power to extend its boundaries as determined by the act of 1876, which created it and which confined it to the city limits of the town of Harrodsburg. There was no legislation prior to the act of 1906, whereby any graded school once established could extend its boundaries, except the act of 1897, and, as we have seen, that act applied only to graded schools of cities of the fifth and sixth classes and in rural communities. It did not apply to the graded school of the Harrodsburg educational district which was located in a city of the fourth class.

Now it is true that in this case at least as early as, and no doubt earlier than, 1903, a considerable portion of the territory outside of, and immediately adjacent to, the city of Harrodsburg was paying taxes to

the Harrodsburg educational district, and a number of pupils from this territory were attending the graded schools of that district. In that year, the county superintendent of Mercer county in complying with the mandate of section 67 of chapter 260 of the acts of 1891-92-93, which we have quoted above, set down in a book kept for that purpose the boundaries of the various common school districts of his county and in so doing described the Harrodsburg educational district as containing territory contiguous to the city of Harrodsburg. It was this 1903 boundary as so described by the county superintendent that the trial court held to be the present boundaries of this district. However, as we have seen, the county superintendent had under section 67 no duties to perform with reference to mapping these graded school districts, and, further, as this graded school district had up to that time been without statutory authority to extend its boundaries, it necessarily follows that the county superintendent could not extend them by making the description he did in 1903. After the act of 1906 was passed, the property of W. H. Patterson outside the city limits of Harrodsburg was in 1912 added to the district, but Patterson's property was not contiguous to the city limits of Harrodsburg, and as the intervening territory was that laid down in the 1903 boundary, and it being, as we have seen, no part of the district, it follows that the district could not add to itself this Patterson property between which and the district there intervened territory not belonging to the district. The records of the board of this educational district running back to 1892 are still in existence, and, so far as this record discloses, show no attempted additions to the educational district between 1906 and 1914, except perhaps the Patterson property. The act of 1906 was repealed in 1914 and so the district was thereafter without power to annex territory until the act of 1920. It is not contended that any territory contiguous to the city of Harrodsburg has been added pursuant to the provisions of this act to the district as established by the act of 1876.

From what we have said, it inevitably follows that the boundaries of this educational district are coincident with the city limits of Harrodsburg, unless, as is earnestly argued, the Legislature meant by section 1 of chapter 14 of the Acts of 1920, now section 3587a-1 of the Statutes, 1922, and subsequent editions, which we

have quoted above, to cure any defects in the organization of a school district coming within its purview by providing that the cities of the fourth class "including any territory which has heretofore been added for school purposes outside the limits of said city" should constitute the school district. As we have seen, there was a period between 1906 and 1914 when graded school districts in cities of the fourth class and organized under a local act or the general graded school laws of the state were authorized to add to their territory. Such schools could be and indeed were located in cities of the fourth class as this Harrodsburg school was, and, as we have seen in the Princeton Case, supra, the Princeton school was; the former operating under a local or special law and the latter under the general school laws. Moreover, in the act of 1916 (Acts 1916, c. 59) creating the optional commission form of government for schools in cities of the fourth class, there was a provision for schools operating under that act to add to their territory. Thus we see that when the Legislature came to pass the act of 1920 many school districts in cities of the fourth class contained territory outside the limits of such cities that had been lawfully added to the district. It was such territory that the Legislature had in mind when it wrote in section 1 of the 1920 act that the territory within the city limits, together with territory theretofore added outside the limits, should constitute the district. It was territory that had been legally added to the district. Were it otherwise, we would be construing the statute to be retroactive in its operation, and that by implication, for there is certainly nothing in the act to expressly require such a construction. A construction involving a retroactive operation of a statute is not to be favored. 25 R. C. L. 786, et seq.

We have not overlooked the case of Gosney v. Butler Graded School, 219 Ky. 242, 292 S. W. 781, so confidently relied upon by the district. The case is not at all apposite. In that case, there was statutory authority for the organization of the graded school district; that is, section 4464 of the Statutes. However, because of a failure to follow the method laid down in the statute, the district was not legally organized. Despite this, the district functioned at least as a de facto district for 34 years, when it was sought to have it declared no district. It was held that as disastrous con-

564

sequences to the school system would follow if the district were dissolved, the relief demanded should be refused. In the case at bar, there was no statutory authority to add to the district except between the years 1906 and 1914 when, as the record shows, no property was added except an isolated piece, and that not legally. There could be, then, not even a de facto addition; the statutory authority being lacking. Further, no such disastrous consequences will follow in this case from confining the boundaries of the district here in question to the city limits of Harrodsburg as would have followed the dissolution of the Butler graded school district.

We conclude, therefore, that the boundaries of the school district here in question are coincident with the city limits of Harrodsburg. Such being our views, the judgment in so far as it is appealed from in the case of Board of Education of Harrodsburg v. Shirley must be affirmed; but in so far as it is appealed from in the case of Dean et al. v. Board of Education of Harrodsburg, it must be reversed, with instructions to enter a judgment in conformity with this opinion.