CASE 3--PETITION EQUITY--OCTOBER 9.

## Hopkins, &c. v. Swift, &c.

APPEAL FROM CALLOWAY CIRCUIT COURT.

1. SCHOOL TRUSTEES—CONTESTED ELECTION—JURISDICTION.—One who at an election held for the purpose of electing school trustees received the highest number of votes and a certificate of his election, and who qualifies and enters upon the discharge of his duties, can not be deprived of his right to hold the office, except in the manner prescribed by law, which is by contest before the county board, under the provisions of sections 1534 and 1535 of the Kentucky Statutes, which empowers such board to determine contested elections of any office elective by the voters of a county "or any district therein, except members of the General Assembly." And the county superintendent has no authority to determine such a contest, and jurisdiction to do so can not be conferred upon him by consent or agreement of the parties.

2. ELECTIONS—RIGHT OF VOTER TO CHANGE HIS VOTE.— After a vote is cast and recorded, and the voter has left the table where his vote was taken, and other votes were cast and recorded after his, he then has no right to have his vote changed and recorded for another candidate, even though he intended to vote for such other candidate in the first place and by mistake or inadvertence called the wrong name; and it would not have been proper for the officers of election to change his vote as requested.

W. B. KEYS AND THOS. P. COOK FOR APPELLANTS.

1. Where the voter makes a mistake in voting, the record can not be changed by the officers of election. (Cowan v. Prowse, 14 Ky. L. R., 273.)

2. After a certificate of election is issued, the only remedy is a pro-

Hopkins v. Swift.

ceeding alleging fraud. (Riggs v. Stephens, 13 Ky. L. R., 631.)

3. There being no vacancy, the appointment by the county superin-
tendent of a trustee was void; and the acts of the appointed trus-
tee are not binding on third parties. (Am. & Eng. Ency., vol. 19,
p. 430; section D; Rice, &c. v. Commonwealth, 3 Bush, 14; Creigh-
ton v. Commonwealth, 83 Ky., 142; Tompert v. Lithgow, 1 Bush,
176; Smith v. Cochran, 7 Bush. 154.)

4. No one but the defeated candidate, Lee, had the right to contest.
He neither contested nor authorized any one to do so.

L. C. LINN, JR., FOR APPELLEES.

1. A voter in an election for school trustee, where the voting is *viva
voce*, who has by mistake, voted for one other than he intended,
has the right within a few minutes to have the officers change
his vote. (Anderson v. Winfree, 85 Ky., 597; Cowan v. Prowse,
14 Ky. L. R., 273.)

2. Where the election is a tie, the county superintendent has the
right to appoint a trustee. (Sec. 4436, Ky. Stats.)

3. The same strictness is not required in election of school trustees
as in elections for district or State officers. (Riggs v. Stephens,
13 Ky. L. R., 631, and 12 Ky. L. R., 637.)

JUDGE LANDES DELIVERED THE OPINION OF THE COURT:

On the first Saturday in June, 1895, an election was
held in White Common School District No. 34, of the
county of Calloway, for the purpose of choosing a trus-
tee for the common school of the district for the term
fixed by law.

It appears that due notice of the election had been
given; that it was held at the district school house, and
that it was held and conducted in all respects as pre-
scribed by the statute. (Kentucky Statutes, section
4434.)

The appellant, Elias Hopkins, and William Lee, res-
idents of the district and duly qualified, were the only
candidates for the office, and at the close of the polls it
was ascertained by the judges of the election that twen-

ty-five votes were cast for the appellant and twenty-three for the said William Lee, and, the appellant having received a majority of the votes cast, the judges of the election, as required by the statute, issued and gave him a certificate of election, and reported to the county superintendent, in writing, within the time required by the statute, the fact that the appellant was elected.

After receiving the certificate, and in due time, the appellant, Hopkins, qualified by taking the oaths required by law before a justice of the peace of the county, and forwarded to the county superintendent a certificate of his qualification, signed by the justice.

A few days after the election complaint was made to the county superintendent by the appellee, J. H. Swift, who was the chairman of the trustees for the said district, that the appellant, Hopkins, was not lawfully elected, and, at his instance, the county superintendent undertook to investigate the case and to ascertain whether or not the appellant, Hopkins, was properly elected, and entitled to the office.

It is to be observed that William Lee, who was the competitor of Hopkins for the office at the election, made no complaint, and did not propose to contest the election, and did not authorize anyone to contest it for him, and that there was no written notice of contest. Besides, it does not appear from the record that the appellant, Hopkins, was, either in person or by attorney, a party or that he consented to this investigation, although he was present a part of the time during which it was in progress.

But a great many witnesses were examined before

the county superintendent, and their testimony related
mainly to the vote of one W. L. Clayton, which was cast
at the election, recorded on the poll book, and counted
for the appellant, Hopkins; and this was the basis of
the complaint, it being claimed that Clayton's vote
ought to have been recorded and counted for Lee in-
stead of for Hopkins.   The testimony was in substance
that when Clayton offered to vote his name was entered
in the poll book by direction of the judges, and, when
· sked by the judges for whom he wished to vote, his an-
swer was that he would vote for appellant, Hopkins,
and his vote was accordingly so recorded by the clerk;
that he at once left the table where the officers of the
election were taking the votes, but remained in the
room  a few feet from the table, and   that two   other
voters presented  themselves,  and  their  votes were
given and recorded; that after the lapse of several min-
utes  Clayton went up to the table on which the  poll
book was lying, and, pointing to the poll book which
showed that his vote was recorded for Hopkins, said to
the judges that he wanted it changed from Hopkins to
Lee, as he intended to vote, and had in fact voted, for
the  latter and not for the former, and requested  the
judges  to change it, but that the judges  refused to
change it or permit it to be changed.

Several of the witnesses stated, and the proof seems
conclusive, that when asked for whom he would vote,
Clayton answered:   "Hopkins is a poor man, and I am
a poor man, and I will vote for Hopkins."

At  the conclusion of the examination of  the  wit-
nesses the county superintendent decided that the vote

of Clayton ought to have been changed by the officers of the election, as requested by him, and that if the change had been made there would have been a tie vote between Hopkins and Lee, and, assuming that there was a vacancy in the office, proceeded at once to appoint and qualify the appellee, T. P. Tarry, to fill the vacancy.

The decision of the county superintendent was made on the 6th day of June, 1895. On the 8th day of July following, in pursuance of a call of appellee, Swift, as the chairman of the board of trustees, a meeting of the trustees was held at the district schoolhouse for the purpose of employing a teacher for the district school for the school year. That meeting was attended by appellants, Hopkins and T. P. Jones, one of the trustees, and appellees, Swift and Tarry, the latter claiming to be a trustee by virtue of the appointment made by the county superintendent to fill the vacancy supposed to exist as above stated.

At that meeting appellants, Jones and Hopkins, being a majority of the trustees, if Hopkins was lawfully in office, by written contract employed appellant, Ellen Keys, to teach the school for five months, and appellees, Swift and Tarry, who constituted a majority of the trustees, if Tarry was lawfully appointed and in office, by a similar contract employed appellee, M. T. Morris, as the teacher. This being the situation of affairs, the appellants commenced this action in the Calloway Circuit Court, in which they asserted the right of appellant, Hopkins to the office of trustee, and the right of appellant, Ellen Keys, under her aforesaid contract, to teach the district school, which rights, they al-

leged, were being invaded and intruded upon, and of which they were being deprived by the appellees, and praying that the appellees be enjoined and restrained from interfering with them in the exercise of the rights claimed by them in the premises.

Motion was made on notice by the appellants for a temporary injunction, issue was joined upon the answer, denying the rights claimed, and setting up the claim of appellee Tarry to be the lawful trustee under the appointment made by the county superintendent, and the claim of appellee Morris to have a valid contract to teach the district school upon the facts, detailed above, and the case was submitted to the court and heard upon oral testimony.

Upon the hearing the lower court adjudged in substance that the officers of the election had the lawful right and ought to have changed the vote of Clayton from Hopkins to Lee, and that "said change would have resulted in a tie, and thereby caused a vacancy;" and, further, that the county superintendent had the lawful right to appoint a trustee for the district, "as the officers of the said election failed to cast the deciding vote;" and that the appointment of appellee Tarry as trustee by the county superintendent, and his acts as trustee under the said appointment, were valid. The injunction prayed for was accordingly denied and the petition dismissed, and that judgment is before us on this appeal.

The facts brought out in the testimony given on the trial of the case in the court below, relative to the vote of Clayton at the election for trustee, were substantially

as above stated, and, as it appears from the record, do not differ materially from the facts detailed by the witnesses on the hearing of the case before the county superintendent, and, after a careful investigation of the case as it is presented in the record before us, we have not been able to find that the judgement appealed from has anything, either in the facts or the law, to sustain it.

It appears that the statute regulating such elections was literally complied with, and that, upon the votes as cast and recorded, the appellant Hopkins received a majority of the votes.

It further appears that he received a certificate of his election in due form, and that he qualified by taking the oath required, and entered upon the discharge of his duties as trustee. He thus became an officer in fact, with all of the evidence of his right to the office that was required by the law, and could not be deprived of his right except in the manner prescribed by law.

The only method of contesting such elections is that provided by sections 1534 and 1535 of the Kentucky Statutes, which provide a board for determining the contested election of any officer elective by the voters of a county " or any district therein, except members of the General Assembly," and prescribe the steps or method of procedure. This board is known as the county board of contest, and has jurisdiction in respect of common school districts as well as of other districts in a County.

There is no statute under which a county superintendent has the authority to determine any such contest, and jurisdiction to determine a contested election

of a district trustee can not be conferred by consent or agreement of the parties interested. So that in this case it is immaterial whether the  appellant, Hopkins, and  his defeated  competitor, Lee, were before  the county superintendent or whether they were parties to the proceeding before him, or whether they consented that he might determine the question of the right of Hopkins to the office or not.   In either case and in any event the county superintendent was without jurisdiction or authority over the question, and the proceedings  before him and his finding, or so-called  "judgment," were void and  of  no force  whatever  in  law. There was no vacancy in the office of trustee which he was empowered to fill.   A vacancy in office is defined by the statute to be "such as exists where there is an unexpired part of a term of office without a lawful incumbent  therein, or when the person elected or  appointed to an office fails to qualify according to law, or where there has been no election to fill the office at the time appointed by law. It applies whether the vacancy is occasioned by death, resignation, removal from the State, county,  or district, or  otherwise." (Kentucky Statutes, section 1521.)   If there had been a tie vote between appellant, Hopkins, and his competitor, Lee, and it had been so certified to the county superintendent, then, under section 4434, as well as under the section quoted from, there would have been a vacancy which the county superintendent could have filled by appointment.   If there had been a regular contest, the county superintendent was "empowered to recognize a trustee among the contestants" until the dispute was settled.

(Kentucky Statutes, section 4436.)    So that none of the conditions existed upon which, under the different provisions of the statute, a vacancy existed at the time he appointed the appellee, Tarry, as trustee, and the appointment was, therefore, without authority and void, and conferred no lawful authority upon Tarry to act in the office of trustee, which, as we have seen, was held and filled by the appellant, Hopkins, who was in possession of the requisite evidence showing his right to it.

But if the county superintendent had the power and authority, under the statute, to determine, the question as to the right of the appellant, Hopkins, to the office in question, and if the case was properly before him for adjudication, the ground upon which he ascertained and adjudged that Hopkins was not elected and that there was a vacancy in the office was not such as would have authorized such a judgment.   For, when Clayton cast his vote for Hopkins and it was so recorded, and after he left the table where his vote was taken and other votes were cast and recorded after he voted, as was the case here, he had no right to have his vote changed from Hopkins to Lee, even though he intended to vote for Lee in the first place and by mistake or inadvertence called it out for Hopkins instead of Lee, and it would not have been proper for the officers of the election to change his vote as they were requested by him to do.   Counsel have referred to no authority for changing the vote under the circumstances named, and, so far as we are advised, the precise question has never been directly before this court.

Cases have arisen where the right to change a vote that has been cast and recorded has been based upon the alleged fraud or mistake of the officers of the election, and this court has held that, where fraud or mistake on the part of the officers of election in the record of the vote was clearly established, it should be changed to conform to the intention of the voter. The principles upon which this court has acted in cases of this class are well illustrated in the cases of Newcum v. Kirtley, 13 B. Mon., 515; Anderson y. Winfree, 85 Ky. 597; Cowan v. Prowse, 93 Ky., 156.

In the case of Anderson v. Winfree it was held that, in the case of *viva voce* voting, if it can be made to appear by the evidence, without doubt, that the vote of a person, cast for one candidate, was, by mistake of the clerk, recorded for another, the vote ought to be changed to accord with the intention of the voter. And in Cowan v. Prowse the court said: "Though the evidence in such case may be entirely satisfactory that a mistake was made, it does not necessarily follow it was committed by the clerk, for the voter may himself have inadvertently called or presented to the officer of election the name of the candidate he did not really intend to vote for, and, if so, the record ought not to be changed."

This is the correct principle in cases of this kind, and applies directly to this case, conceding the fact to be that Clayton did intend to vote for Lee, but by his own mistake or inadvertence, called the name of Hopkins as the candidate he wished to vote for. Any other rule

would be likely to produce confusion and uncertainty in all elections of the kind.

We do not think it would be proper for us here to pass upon any question arising upon the claims of the persons who were employed to teach the school in district No. 34, arising upon their several contracts, which may be the subject of future litigation.

But, for the reasons given, the judgment of the court below is reversed and the cause remanded, with directions that a judgment be entered declaring the right of the appellant, Hopkins, to the office of trustee in common school district No. 34, of Calloway county, and enjoining the appellees and each of them from interfering with him in the discharge of his duties as such trustee, and also enjoining appellee, Tarry, from exercising or attempting to exercise the duties of trustee in said district, and for further proceedings consistent with this opinion.