CASE 64.—MANDAMUS BY W. H. McDONALD, AS TREASURER OF A GRADED COMMON SCHOOL DISTRICT, AGAINST B. E. PARKER, COUNTY SUPERINTENDENT, TO PAY CERTAIN MONEY ALLEGED TO BE DUE THE DISTRICT.—May 14, 1908.

## McDonald, School Treasurer, v. Parker, County Supt.

Appeal from Knox Circuit Court.

H. C. FAULKNER, Circuit Judge.

Judgment for defendant, plaintiff appeals—Reversed.

1. Schools and School Districts—Public Schools—Establishment ·of—Elections—Defects in Proceedings—Time for Raising Objections.—Where, within due time after the holding of an election to establish a graded school within a school district, the proper authorities declared that the school was established by a majority of the votes cast upon the question, and for 17 years thereafter a graded school was maintained without

objection being made either by the State or county officials or by the taxpayers, the county superintendent of schools, who had always recognized the graded school as established, who had made official reports accordingly, and who had before his employment as superintendent been a teacher in the school for several years, could not in an action against him for moneys belonging to the graded school district, after such a lapse of time, raise objection to defects in the orders of the court authorizing the election.

2. Same—School Funds—Use for Sectarian Purposes.—The administration building of a denominational college situated in a graded school district was entirely destroyed by fire, which made it impossible to open the institution to its full capacity until the building could be rebuilt, and left the institution with more teachers than it could accommodate in the remaining building. Before the fire the trustees of the graded school district had made overtures to one of the male teachers of the college to secure his services as principal of their school, but were unable to secure him because of his contract of employment with the college. After the fire, such teacher resigned from the college, and was employed with two other male teachers, to conduct the graded school. The college donated the services of two lady teachers, who were under contract with it, and whom the graded school could not employ to teach because they had no certificates from the State entitling them to teach in such school. All the teachers thus employed were thoroughly competent, and the school was conducted in a most satisfactory manner. Held, That there was no such combination between the trustees of the graded school and the authorities in charge of the college as would authorize the county superintendent to withhold from the school district funds paid into his hands by the State and county for the benefit of the district, under Constitution section 189, providing that no portion of any fund or tax raised or levied for educational purposes shall be appropriated to or used by or in aid of any church, sectarian, or denominational school.

J. M. ROBISON, J. D. BLACK, P. D. BLACK and S. B. DISHMAN for appellant.

B. B. GOLDEN for appellee.

OPINION OF THE COURT BY JUDGE BARKER—Reversing.

Appellant, W. H. McDonald, who at the time this litigation commenced was the treasurer of graded common school district No. 1, instituted this action against B. E. Parker, county superintendent of common schools of Knox county for the purpose of obtaining a writ of mandamus requiring the appellee to pay over to him, as treasurer, the sum of $1,470, which was the pro rata of district No. 1 of the common school fund in his hands for distribution in Knox county for the school year 1906-07. Appellee does not deny the possession of the money, but resists the action to require him to pay it over to the treasurer on two grounds: First, a defect in the election proceedings by which the district was established as a graded school; and, second, because the trustees have made a combination with Union College, in violation of the provision of section 189 of the Constitution. The issues on these two defenses were properly joined, and, the case having been submitted to the circuit judge, on final hearing he dismissed the petition; and from this judgment this appeal is prosecuted.

The first defense may be disposed of in very few words. It is based upon supposed defects in the orders of the court authorizing the submission to the qualified voters of the district the question whether or not a graded school should be established therein and certain bonds issued for the purpose of erecting buildings, etc. The election by which the graded school was established in the district was held 17 years ago, and in due time thereafter it was declared

by the proper authorities that the graded school was established by a majority of the votes cast upon the question; and ever since it is not disputed that a graded school has been maintained and carried on in the district without any question by either the State or county officials, or the taxpayers interested in the proposition. The appellee has himself as superintendent always recognized it as an established fact, and has made official reports accordingly. Before he became superintendent, he was employed as teacher in the school for several years. It is manifest that it would be intolerable, after a district has thus been established, if the legality of the election by which it was established could be called in question in a collateral proceeding every time a litigant is tempted by the stress of his case so to do. There was no contest inaugurated to call in question the validity of the election by which the district was established as a graded school, and, as the time has long since expired in which such a contest could be made, it cannot now be done. Hopkins v. Swift, 100 Ky. 14, 18 Ky. Law Rep. 526, 37 S. W. 155; Wilson, etc. v. Hines, 99 Ky. 221, 35 S. W. 627, 37 S. W. 148, 18 Ky. Law Rep. 233; Cole v. Commonwealth, 98 S. W. 1002, 30 Ky. Law Rep. 385.

The second defense, which is based upon the theory that the trustees of the school have made a combination with the authorities in charge of Union College, which is situated in the district, grows out of the following facts: Union College is an educational institution operated under the auspices of the Kentucky Conference of the Methodist Episcopal Church. In September, 1906, Union College had among its teachers Prof. G. H. Reibold and two ladies, the Misses Weaver, who were under contract with it

to teach during the ensuing school year. In August, 1906, Union College suffered a disastrous fire, by which its administration building was totally destroyed. This misfortune made it impossible to open the institution to its full capacity until the burned building could be rebuilt, and the trustees of the institution found themselves with more teachers on their hands than they could utilize in teaching the student body they had room to accommodate in their remaining buildings. A rearrangement of their professional corps became absolutely necessary. Shortly before the fire, the trustees of the graded school were anxious to secure the services of Prof. Reibold as principal of their school, and had made overtures looking towards his employment in this capacity. He informed them, however, that he was under contract with Union College to teach for it, and could not honorably release himself. After the fire the faculty of Union College became anxious to make some arrangement by which they could be relieved of some of the burden of paying teachers whom they could not use; and, looking to this end, the president of the college, Dr. Easley, opened negotiations with the trustees of the graded school. It was first thought that some sort of fusion could be entered into by the two institutions, which would be mutually advantageous to them, and considerable discussion along this line was had, some of the trustees being in favor of it if it could be legally done; but, upon the advice of counsel, this whole idea was abandoned, the attorney for the trustees being correctly of the opinion that no part of the public school fund could be lawfully paid over in any way or by any arrangement to a denominational school. Prof. Reibold then resigned his position as teacher in Union College, and

was employed; along with Profs. Faulkner and Jones, as teachers to conduct the graded school. It was suggested also that the Misses Weaver should be employed in the lower grade department of the district school to teach the smaller children, but it was found to be an insuperable objection to this that they did not have the certificates required by the statute, which authorized their employment as teachers in the common schools of Kentucky. Thereupon the faculty of Union College, being under contract with the Misses Weaver for the ensuing year, donated their services as teachers to the graded school; Union College undertaking to pay them their salaries, and their services to be absolutely free to the district. The contract between the trustees and Profs. Reibold, Faulkner, and Jones is as follows:

"This contract made and entered into this September 13. 1906, between John Bolton, L. W. Farmer, A. W. Hopper, J. Stanfill, and Benjamin Mathews, trustees of Barboursville graded common school district No. 1, parties of the first part, and G. H. Reibold, W. C. Faulkner, and H.. B. Jones, parties of the second part, witnesseth: That for and in consideration of the conditions and obligations hereinafter set out, the first parties have this day employed second parties to conduct and teach the said common graded school district No. 1, Barboursville, Ky., for a period of nine months, beginning on September 13th, 1906. The said second parties agree to teach each and every white child within the lawful school age, living in said district, who presents himself and desires to be taught, free of charge, for the said full period of nine months. Said school to be taught in accordance with the common school laws of the State of Kentucky and said teachers and school at all times be

McDonald, School Treasurer, v. Parker, County Supt.

subject to the visitation and lawful authority of. the said trustees of said district and the county superintendent of schools of Knox county and the Superintendent of Public Instruction of the State of Kentucky. Said second parties are, at all times, to keep and maintain the school rooms in a clean and healthful condition. The said G. H. Reibold is to be principal and have general supervision and control of the entire school, both teachers and pupils. The said W. C. Faulkner is to be first assistant teacher and the said H. B. Jones, second assistant teacher. The said G. H. Reibold is to receive for his services the sum of one hundred dollars per month. The said W. C. Faulkner shall receive the sum of fifty dollars per month for his services, and the said H. B. Jones shall receive the sum of fifty dollars per month for his services; all of said teachers to be paid out of the public fund of said district and shall be paid at such time as the public funds shall be turned over to the treasurer of said district. First parties shall furnish all fuel and supplies and provide janitors. Trustees: John Bolton, Chairman, A. W. Hopper, L. W. Farmer, J. F. Stanfill, Teachers: H. B. Jones, W. C. Faulkner, Geo. H. Reibold."

At the commencement of the school the trustees distributed among all the patrons of the graded school the following notice: "Notice To the Patrons of Barbourville White Graded School District No. 1: All patrons of Barbourville (white) graded school district No. 1 will take notice that said school will open Thursday, September 13th, 1906. The board has secured Prof. Geo. H. Reibold as principal, with an able corps of assistants. The school is free to all white children living in said district who are within the school age." It is conceded that the school which

was conducted by the trustees for the school year in question was the most successful and prosperous one from an educational standpoint ever held in the district. It is admitted that every white child of school age who desired so to do was taught therein free of charge. But it is said the fact that Prof. Reibold and the Misses Weaver had but lately come from Union College, and the young ladies were without the certificate required by law, authorized the superintendent to withhold the fund paid into his hands by the State and county for the benefit of the district.. Section 189 of the Constitution, which is invoked in support of part of this position, is as follows: "No portion of any fund or tax now existing, or that may hereafter be raised or levied for educational purposes, shall be appropriated to, or used by, or in aid of, any church, sectarian or denominational school."

It is conceded by appellant that the young lady teachers were without the necessary certificates which would authorize their employment as teachers in the common school system of the State; but it does not follow that, because they could not be employed as teachers for pay, they might not teach in the public schools without pay. It is abundantly established by the evidence in this case that these ladies were eminently qualified to teach young children, this being a branch of pedagogy for which they were especially educated and by nature adapted. We are unable to see how their teaching without cost to the district violates either the letter or the spirit of the statute, which forbids the employment of any one as a teacher who is ithout the required certificate. The reason and spirit of the statute is that the public money devoted to educa-

tional purposes shall not be squandered on incompetent teachers, and the certificate is a guaranty of the qualification of the teacher. The statutory requirement is undoubtedly a wise and useful provision, but it was not intended to prevent charitable persons from donating their services to the education of the common school children. If one skilled in the teaching of music or drawing were so philanthropically disposed as to be willing to teach the children music or drawing without any charge to the State or the district, it would hardly be supposed that this would be refused because the specialist in question did not have the statutory certificate authorizing his general employment as a teacher in a public school. Philanthropy is not so prevalent in our State that laws must be enacted to forbid its exercise. The record before us establishes without any sort of contradiction that the authorities of Union College finding themselves under contract with the young ladies in question, and, being unable to employ them in their own school, donated their services to the use of the pupils of graded schools in district No. 1. Nor do we think the evidence in this case authorizes the inference that there was any connection, direct or indirect, near or remote, between Union College and the graded school. It is shown in the testimony, and not denied, that the appellee was present at the opening of the public school in September, 1906; that he made a speech there in which he congratulated the district upon its good fortune in securing the services of so able a body of teachers, and complimented the trustees upon their zeal and fidelity in inaugurating the school under such auspicious surroundings. We are not advised as to why he changed so radically his position with reference to this school, for he bears able testi-

mony that he never had a better school under his
charge as superintendent than that which he seeks
to destroy in this litigation.

It cannot be controverted that the statute forbids
the employment as teachers in the common schools of
persons who do not hold certificates showing them
competent to teach. But we hold that the provision
does not forbid the trustees from accepting the aid
of teachers whose services are given gratuitously.
Altruism is not within the inhibition of the statute.
Nor can it be denied that the Constitution forbids the
diversion of any money raised by taxation for public
education into the coffers of any denominational
school; but we have read this record several times
with the utmost care, and have failed to find the slight-
est evidence of any intention to pay one cent of the
fund involved here to Union College or to any one
connected therewith or to either of the Misses
Weaver. On the contrary, the uncontradicted testi-
mony shows that every dollar of it will be paid (and
is due) to Profs. Reibold, Faulkner, and Jones, who
were employed by the trustees to teach the school
during the session of 1906-07. No one disputes that
these men were qualified in every way to teach in the
public schools, or that they carried out their contract
with the utmost fidelity. It is conceded that the
character of their work was of the highest class, and
that every white child in the district within the pupil
age who desired to attend school was received and
taught. So far from putting the public school under
sectarian influences, the evidence shows that nearly
all of the trustees are members of, or sympathize
with, denominations other than the Methodist church.
Not one of the teachers in question, including the
young ladies, were shown to be members of or sym-

pathizers with that denomination. The truth is the appellee's defense, so far as the constitutional point is concerned, is merely suspicion based upon very small and insignificant circumstances. Among others, he showed that there were two very poor young men trying to work their way through Union College, that President Easley persuaded the trustees to hire these boys at $8 per month each to act as janitors in the school. It is not denied that the services of a janitor were needed, or charged that the young men did not faithfully earn the pittance paid them; but the fact that they were students at Union College at the time of the employment seems to have presaged all the evils of a union of church and State. Again, owing to the fact that appellee wrongfully withheld from the treasurer the money with which to operate the school, the trustees were unable to pay Prof. Reibold his salary; and, in order that this able educator might continue his work, President Easley persuaded his board to advance his salary, taking his obligation to repay it out of the money coming from the State. But for this generous action by the board doubtless the deadly thrust aimed by the appellee at the existence of the school would have been fatal in its consequences.

In conclusion, perhaps no higher encomium could be paid the character of the school involved here than is contained in the opinion of the learned trial judge whose judgment we are reviewing. After setting out the arrangement we have detailed above, he said: "Under this arrangement, in connection with Profs. Reibold, Faulkner, and Jones, a most excellent school has been conducted for some seven months in the graded school building. It has given almost universal satisfaction in the town of Barbourville. In fact,

I might say, that the school for this year has been the best ever conducted in the city of Barbourville. * * * * The proof shows, I think, that every child within the school age of Barbourville graded school district has had an opportunity to attend this school free. I regard it as the very greatest of misfortunes to the people and the children of Barbourville if they should lose this school; but it is a misfortune not of my making. I think that the defendant would much better have administered to the interests of the people of Barbourville if he had sought to have avoided this issue, rather than to raise it; but that is a matter for him—not for me—to decide.''

We are of opinion that Profs. Reibold, Faulkner, and Jones had a valid contract with the trustees of graded school No. 1 of Barbourville to teach for them during the school session of 1906-07; that they earned this money by honest and faithful work; that the evidence shows conclusively that all of it is due and will be paid to them, and none of it will ever go to Union College or any one connected with it, nor to either of the young ladies who lacked the required certificates to qualify them to teach in the public schools. These professors were in no wise to blame, even if we assume (which was not shown) that some of the acts of the trustees were irregular or improper. Having faithfully performed their contract. and the district having received the benefit of their services, they cannot be deprived, by any defense based on suspicion, of the reward justly due them.

For these reasons, the judgment is reversed, with directions to the trial court to enter a judgment in conformity with the prayer of the petition.

Petition for rehearing by appellee overruled.