## Hurley, et al., v. Motz, et al.

(Decided January 9, 1913.)

### Appeal from Campbell Circuit Court.

1. Municipal Corporations—Legislature without Power to Create a City.—The legislature had no authority to create a city or to convert a taxing district into a city of the fifth class, as it only has power to assign incorporated cities and towns to the class in which they belong.

2. Constitutional Law—Delay Does not Affect Right to Attack an Invalid Act Creating a Municipal Government.—A citizen and tax-payer of a city had the right more than two years after the city was organized to bring a suit attacking its creation as being in violation of the constitution.

H. M. HEALY, Jr., and RAMSEY WASHINGTON for appellant.

BAILEY & VEITH, and Wm. N. WARREN for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This suit was brought by the appellees Motz and others, citizens and taxpayers of Clifton, against the appellants, who are the Mayor and Board of Councilmen of the city of Clifton, for the purpose of having declared invalid the act creating the city of Clifton and to enjoin the appellants from exercising any duties as officers of the city. From the judgment of the lower court granting the prayer of the petition this appeal is prosecuted.

In 1888 the Legislature of the State created a taxing district known as the District of Clifton, in Campbell county, and this taxing district, under authority of the act, possessed many of the powers of a municipal corporation, and continued in existence until 1910, when the Legislature of the State converted the district into a city of the fifth class. After the passage of this act the government of the city was organized in the manner provided for the government of cities of the fifth class, and the Mayor, Board of Councilmen, and other officers of the city have continued since the establishment of the city by the legislative act to perform all the functions that officers of fifth class cities are invested with by the general laws of the State.

In the case of Albershart v. Donaldson, 149 Ky., 510, we had before us the identical question here involved so far as the conversion of the district of Clifton into a city of the fifth class is concerned. In that case, in which was involved the validity of an act of the Legislature converting the district of Highlands into a city of the fourth class, we held that the act was invalid, and that the Legislature had no authority to create a city out of a district.

It is attempted, however, to distinguish this case from that upon the ground that the validity of the act creating the city of Highlands was assailed before the city government was organized under authority of the act, while in this case the suit attacking the validity of the act was not brought until more than two years after the city government was organized. With this difference as a basis the argument is made that as since the organization of the city government, municipal contracts looking to the improvement of the streets, sidewalks and public ways of the city had been entered into, and some of the work let under these contracts is now in process of construction, to declare the act invalid would result in great confusion, involve the citizens of the territory comprising the city in much litigation, and result in probable loss to contractors and others who, acting on the faith of the validity of the act creating the city, dealt with the municipal government as a legally constituted body.

The argument is further made that the laches of Motz and others estops them from now attacking an act the validity of which they acquiesced in from the organization of the government in 1910 to the institution of this suit in 1912. In support of this line of argument counsel for appellant rely upon the opinion of this court in

Adams v. Bosworth, 126 Ky., 61. In that case a suit was brought by or at the instance of one of the dominant political parties of the State in 1906 to have declared invalid, because in violation of the constitution of the State, an act of the General Assembly passed in 1893, apportioning the State into senatorial districts. In holding that it was too late in 1906 to question the validity of a political act passed in 1893, we said:

"Persons who believe that their political rights are injuriously affected by unconstitutional legislation cannot condone the wrong for a long period of years by passively consenting to it, and defer taking action until confusion, if not chaos, would result from the long delay.  *  *  * When it is sought to vacate enactments involving the life of one of the great co-ordinate departments of the government, the public interest and the orderly administration of affairs demand that action should be taken as soon as practicable after the condition objected to becomes known and effective. The argument that, if an act is invalid when passed, the vice continues to live in it as long as it remains on the statutes, and therefore it may be annulled at any time, is not sound when attempted to be applied to legislation that is political or administrative in its nature. It may be true that laches cannot give validity to a void act; but when no property right is involved, and the question is purely political and administrative, individuals or parties that have seen the act in operation for years, and the affairs of State carried on under it, without offering objection or making protest, will not be heard at a late day to question its validity. They must act in seasonable time, and not delay until the conditions they have acquiesced in and assented to have become firmly established as a part of the system of government."

But we do not find any principle announced in this case that would authorize us to sustain, upon the ground of laches in bringing the suit, the validity of the act here assailed. In the Adams case the question involved was purely a political one, and concerned only the manner in which the counties of the State should be apportioned into legislative district. No property right was at issue, nor was any question raised affecting the imposition of taxes or burdens upon the people.

Here we have an entirely different question. Property rights and not political rights are the basis of the attack made upon this act. Citizens and taxpayers of the

city are complaining that the city government is imposing upon them burdens in the way of taxes and special assessments, and it is sought to obtain relief from these impositions by the assertion that the city government was and is without authority to impose any taxes or place any burdens upon the citizens and taxpayers of the city.

It may be true that some confusion and disorder will follow a decision declaring the act creating the city invalid and putting an end to the municipal government that for something over two years has been conducted under it. It may also be true that individuals, who have in good faith entered into contracts with the city, may be subjected to expense and probable loss; but considerations of the character mentioned would not justify us in holding that a municipal government may be set up without authority of law and its existence continued merely because confusion and disorder would result if it is pulled down.

Municipal governments are creatures of the law, and the warrant for their creation must be found in a valid statute, or they can have no legal existence. Ours is a government of law, and public officials of every class and every character can only exercise public authority when the right to do so has been conferred on them by law. If delay in attacking a void legislative act such as the one under investigation could have the effect of making it a valid act, we would have the curious situation of individuals exercising governmental functions, not under authority of law, but merely because their right to exercise public authority was not questioned as soon as it might have been. A municipal government that never had any legal existence cannot be continued when its authority is questioned merely because the persons who raise the issue did not act as soon as they might have acted.

In Ferguson v. Landram, 5 Bush, 230, and Hoertz v. Jefferson Southern Pond Draining Co., 119 Ky., 824, it was held that one who procured unconstitutional legislation and received benefits thereunder would be estopped to deny its validity; but this rule has no application to the facts found in this record. It is not shown that the plaintiffs in this action had any part in the legislation that resulted in the establishment of the city of Clifton, and aside from this it is quite clear that an unauthorized local government cannot rest upon the ground that the individuals who attack its validity are estopped by their participation in the procurement of the legislation

or their acquiescence in the administration of the affairs of the city from raising the question.

In the cases where the doctrine of estoppel was applied to deny the right to assail invalid legislation only the complaining individuals were affected, but here the whole people of the city are concerned, and in a measure the public generally. Its officers have large powers and discretion in the administration of the public affairs that belong to municipal government, and the people who are affected by their authority are immediately interested in the question of their power to act. It would be extending the doctrine of estoppel and laches far beyond reasonable or safe limits to apply it in cases like this.

The question of the rights of parties who made contracts with the city before the judgment appealed from was entered, or who had claims or demands against the city created before that date is not before us on this appeal and this opinion is not to be construed as affecting or prejudicing in any manner rights they may have.

The judgment holding the act invalid is affirmed.