## Gosney, et al. v. Butler Graded School, et al.

(Decided March 25, 1927.)

### Appeal from Pendleton Circuit Court.

1. Schools and School Districts.—An election, for the establishment of a graded high school under Ky. Stats., section 4464, called at the same term in which petition therefor is filed, is void.

2. Schools and School Districts.—Although election in 1892 under Ky. Stats., section 4464, for establishment of a graded high school, was void, where school had been in operation for 34 years without molestation, and a community had grown up around it, court, in exercise of discretion, and in view of its inherent power will decline to decree dissolution thereof because of calamitous consequences resulting.

3. Courts.—Courts have inherent power to deny extraordinary writs when in its judicial discretion to grant them would be harmful to the public good.

A. H. BARKER for appellants.

W. E. SETTLE and L. P. FRYER for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

The two appellants, residents and taxpayers of the Butler graded free school district, in September, 1926, filed their equitable action against such school and its trustees, seeking to enjoin the latter from levying and collecting a tax to carry on the school, upon the ground that the election held in June, 1892, under an order of the Pendleton county court, as provided in section 4464, Ky. Stats., was void, and that consequently the trustees had no power or authority to levy such tax.

They allege that on the second day of May, 1892, the requisite number of legal voters and taxpayers in that district filed their petition in the county court petitioning the judge to enter an order calling an election for the purpose of taking the sense of the qualified and legal voters therein on the question of establishing a graded common school therein; and that on the same day and at the same term of court at which the petition was filed an order was entered by that court calling the said election, contrary to the provisions of the statute, by reason of which the election thereafter held under such order was null and void, and conferred no authority on

the defendant trustees to levy and collect a tax in said district to conduct such school.

In a second paragraph it is alleged that the Butler graded free school owns a certain lot and school building in the city of Butler, and that the school building has gone to decay, and is dilapidated, and inadequate for the purposes of maintaining and conducting such school, and that the trustees are threatening to and will, unless enjoined, sell the lot and school buildings thereon and rent a building for the purpose of conducting such school; and further alleging that the trustees had no legal power or authority so to do.

The prayer is that the election to establish the graded high school be adjudged void, and the defendants be perpetually enjoined from levying and collecting a tax to carry on same.

The defendants filed a general demurrer to the petition and, without waiving it, filed their answer denying in general terms, and by way of conclusion, that the board of trustees had no legal right or authority to carry on, conduct or operate the graded school, or to levy and collect the tax for that purpose; and deny that the election so held in 1892 is or was null and void and conferred no authority to levy and collect the tax in question.

In a second paragraph it is alleged that immediately after the election in 1892 the board levied an adequate tax to build an adequate and suitable building for school purposes in the district, and did erect such an adequate and suitable frame building for that purpose; that each and every year since that time the board has levied and collected a tax to conduct and carry on the school, and has so conducted and carried it on each and every year during that period; that the the county board of education and the state board of education have both recognized and cooperated with the trustees of said school district during all those years, and that because of long use, wear, and decay, and the growth of said school in the number of pupils attending same, the school building is now wholly inadequate for the needs of the district, and the state board of education has notified the defendant trustees that it will no longer recognize the school as an accredited graded high school unless they provide an adequate and suitable school building for the district; that the assessable property in the district is about $800,000.00, and the tax levy cannot exceed $1.25 on the $100.00 which would

produce a sum wholly inadequate to carry on the school and provide a new and suitable building for school purposes, and that the district cannot by vote issue bonds in sufficient amount to provide the same; that there is within the district the city of Butler, of about 600 population, and that there are now 188 pupils attending the said school; that under these conditions certain public spirited citizens propose to erect an adequate and suitable building in said district and rent it to the board under a scheme that will eventually result in the district owning said building if it is determined that the trustees have the authority and power to levy and collect a tax as provided by law, and the power to sell the old school site and the building thereon at an adequate price; and these facts are relied upon as an estoppel.

The material facts alleged in the second paragraph of the answer stand confessed under the terms of a stipulation in the record. The petition of the plaintiffs was dismissed, and they have appealed.

Beginning with the case of Doores v. Varnon, 94 Ky. 507, this court has in an unbroken line of decisions held that elections for the establishment of schools under section 4464, Ky. Stats., and similar statutes, providing for the filing of a written petition signed by voters and taxpayers asking for such election, and providing that the county court, "at the next regular term" thereafter, shall order an election to take the sense of the voters on the question of establishing such school and district, where such an election is called at the same term as the filing of the petition it is null and void. Webb v. Smith, 99 Ky. 11; Trustees v. McCarty, 24 Rep. 164; Haynes v. Strunk, 156 Ky. 18; Wilson v. Hines, 18 Rep 232; Cress v. Com., 18 Rep. 633; Smith v. Patton, 20 Rep. 165; Tate v. Com., 20 R. 1370.

These holdings have been, as recited in the opinion first referred to, based upon the theory that it is not a compliance with the statutory requirement if such an election is called at the same term the petition is filed, because the postponement of the ordering of the election to a subsequent term was intended to give additional time to consider the question and enable those interested therein to ascertain whether the application had been made by the required number of legal voters and taxpayers; and that inasmuch as such a proceeding is in the

nature of an *ex parte* one, there is greater necessity for giving to the voters the time provided by the statute for considering such questions as might arise from the nature of the application.

Obviously under these and many other opinions we are compelled to hold that the election in question was void and carried no binding force.

But there is yet another and even more important question involved, and that is whether, after the expiration of more than 34 years, during which time this educational arm of the state has been in full operation without molestation, and during such period that educational board and district has been recognized by both the county and state educational authorities, and the community involved has fostered it and grown up around it as one of its institutions, the courts, in the exercise of a sound judicial discretion and in furtherance of a manifestly beneficial public policy, will permit their processes to be invoked to the end that its educational policies and schemes may be disrupted, and, for the time being, defeated.

One of the chief claims of America to greatness is its almost universal policy of public school education at public expense, and to permit its courts in the exercise of their extraordinary functions to be the instruments, after such a long period, of disturbing and interfering with the orderly processes of public education would be contrary to one of the best recognized public policies of all the states.

It is no innovation, as might be supposed, for the courts to deny an individual or even the state itself, through its accredited officers, the right after so long a period, when conditions have changed, to call in question a void or even an unconstitutional enactment. Here we have for more than a third of a century a board of trustees, in perfect good faith carrying out a well recognized public policy, by maintaining at public expense a public educational institution, we have them throughout each of those years collecting a tax for that purpose, we have that institution recognized by both the county and state boards of education throughout that period. It is disclosed that, acting upon the assumption of the validity of that election, they erected what at the time was an adequate school building, and so long has the district been functioning that not only has that building gone to de-

cay, but the district is so developed in educational ambition, and the school so enlarged that the building is inadequate for present needs.

Must the courts, then, after this great length of time, submit to the demands of two citizens of that district and enjoin its authorities from longer levying taxes to support that school? Or have the courts the inherent power to say, in the exercise of a sound judicial discretion, and in furtherance of an enlightened and well recognized public policy, that our processes shall not be so misused?

In the case of Attorney General v. City of Methusen, 236 Mass. 564, (1920), the attorney general of that state instituted a *quo warranto* proceeding, the purpose of which was to have it adjudged that the defendant city was operating as such under a void and unconstitutional legislative enactment. The Supreme Court of that state, through its chief justice, after passing upon many technical questions favorable to the contentions of the attorney general, and after holding that the legislative enactments under which the city was operating was void, and after holding that no laches can be imputed to the government, and that against it no time runs so as to bar its rights, and after holding that estoppel does not ordinarily apply against the exercise of a public right, declined in the circumstances of that case to grant the writ of *quo warranto,* although asked for by the attorney general of the state, upon the broad ground that under the circumstances the granting of the relief sought would not be a discreet exercise of judicial power nor in conformity to the general public interest.

In reaching that conclusion the court said:

"There is, however, another principle to be considered in this connection. The granting of relief by *quo warranto,* even when sought at the instance of the attorney general, in behalf of the public, is not a matter of absolute right, but is a subject for the exercise of sound judicial discretion. It is the duty of the court to consider all the conditions, including immediate and remote consequences and to determine with a broad vision of the public weal whether on the whole the common interests demand the issuance of this extraordinary remedy. Where the legality of the organization of a municipality is concerned,

then even the attorney general in his public capacity cannot as of right demand the issuance of *quo warranto*. His application must be considered in all its bearings as related to the general welfare. One of the grounds on which *quo warranto* was denied in Commonwealth v. Athearn, 3 Mass. 285, 287, was said by Chief Justice Parsons at page 287 to be that "in the present case it would not be a discreet and proper exercise of their authority." As Lord Mansfield put it in the King v. Stacey, 1 T. R. 1, at page 2: 'The courts are bound to consider all the circumstances of the case, before they disturb the peace and quiet of any' municipal corporation. Where important public interests have become affected and there has been considerable delay, sound judicial discretion may require denial of affirmative action and refusal to oust a municipality from the exercise of its franchise. This proposition is supported by the great weight of authority and no decision to the contrary has come to our attention. State v. Des Moines, 96 Iowa 521, 531 to 536; Jameson v. People, 16 Ill. 257; People v. Maynard, 15 Mich. 463, 470; State v. Lincoln Street Railway, 80 Neb. 333, 346; State v. Leatherman, 38 Ark. 81, 89. Soule v. People, 205 Ill. 618, and People v. Union Elevated Railroad, 269 Ill. 219, 231, where other Illinois cases to the same effect are collected. Cooley, Const. Lim. (7th ed.) 363, 364; (5th ed.) 311.''

An examination of the authorities cited in that opinion is convincing that the courts have the inherent power to deny any and all extraordinary writs when in their sound judicial discretion to grant them under the circumstances, would be harmful to the public good; and that such would be the case here is not to be questioned. The rural community involved has grown up around its graded school for 34 years; it has become a part of the life of the community second to nothing else; its young men and women look upon it as having given them opportunities they might not otherwise have had, and now to interfere and disrupt that organization might at least temporarily interfere with the training and education of many young people.

The English case of the King v. Stacey, 1 King's Bench (Dumford & East, 1 T. R.) involved the applica-

tion for a writ of *quo warranto* to test the validity of the
title of a mayor of an English borough arising under an
election held 20 years theretofore. Lord Mansfield, in
denying the writ, after stating that it had in times past
been held prudent never to show cause against such a
rule, further said:

> "But now since these matters have come more
> under consideration it is no longer a motion of
> course; and the courts are bound to consider all the
> circumstances of the case, before they disturb the
> peace and quiet of any corporation. The next thing
> which the court took into consideration was the
> length of time within which they would grant in-
> formations. It was customary never to refuse in-
> formations for any length of time; but as the incon-
> venience and vexation of this were plainly perceived
> the courts were desirous to go by a certain rule; and
> therefore, as the time was indefinite by the common
> law, and fixed by no statute, they drew a line by
> analogy to the statute of limitations in ejectments;
> they drew it for 20 years; and this has been
> acquiesced in by the bar, and in Parliament, where
> it was once mentioned. Now no person can apply
> for an information in opposition to enjoyment and
> undisputed possession for 20 years. Such a title
> shall on no account be impeached by any private
> person."

He then proceeded to say that such a writ might
be refused even within 20 years under such circumstances
as would justify it.

In the case of People v. Maynard, 15 Mich. 463,
there was involved the validity of the organization of a
township under a statute, and the court, in denying the
writ of *quo warranto*, said:

> "Even in private associations, the acts of par-
> ties interested may often estop them from relying
> on legal objections which might have availed them
> if not waived. But in public affairs where the people
> have organized themselves under color of law into
> the ordinary municipal bodies, and have gone on
> year after year raising taxes, making improvements,
> and exercising their usual franchises, their rights
> are properly regarded as depending quite as much

on the acquiescence as on the regularity of their origin, and no *ex post facto* inquiry can be permitted to undo their corporate existence. Whatever may be the rights of individuals before such general acquiescence, the corporate standing of the community can be no longer open to question. . . . The exercise of jurisdiction being notorious and open in all such cases, the state as well as county and town taxes being all levied under it, there is no principle which could justify any court at this late day in going back to inquire into the regularity of the law of 1857.''

In that case the statute involved was only ten years old.

In many of the other authorities cited in the Mass. case quoted the same principles are enunciated under varying conditions, and involving less periods of time than we have here.

In announcing the doctrine so clearly and vigorously upheld in the cited cases, we are not unmindful of the ruling of this court in Hurley v. Motz, 151 Ky. 451. That was an action by the citizens and taxpayers against the mayor and board of councilmen of Clifton, Campbell county, and its purpose was to declare unconstitutional the act under which that municipality was created. But that action was instituted something more than two years only after the organization of the city under the act, and the court held the act to be unconstitutional and the organization of the municipality therefore invalid. It is true the court in that opinion recognized the confusion and disorder that might follow its decision putting an end to the municipal government, but a consideration of the length of time that had elapsed in that case and in this makes it apparent that the conditions are not only more extreme here, but that the consequences of so declaring in this case would be much more far-reaching and calamitous. Here we have a whole community operating for more than a third of a century a school district absolutely essential to the progress of the community and the enlightenment of its future citizens, while in that case there was only a temporary disorganization of a municipal government which had operated for so short a time that no vital considerations of public policy were neces-

sary to be called to the aid of the court in refusing its processes.

That the courts have the inherent power after the lapse of a long time, in the interest of the public welfare, to refuse to disrupt and disorganize either a municipal corporation or any other arm of the government devoted to the carrying out of a recognized public policy, even when they may have been operating under a void statute or proceeding, is thoroughly established in the courts of both England and America; and we therefore now decline to enter a decree dissolving the graded school district because of the calamitous consequences which would result to the community involved. This view is not based upon any estoppel nor upon any laches, but upon the inherent power of the court to decline under such circumstances to lend its processes to the disruption of the existing order under such conditions, and after such a lapse of time.

It is alleged in the answer that the existing frame school building, because of its long use and decay, and because of the growth of the school since its erection, is wholly inadequate for the needs of the district, and that the state board of education has notified the district board of trustees that it will no longer recognize the same as an accredited graded high school unless the district provides an adequate and suitable school building. Its allegations also show, together with the stipulation, that the maximum tax rate that may be levied upon the assessed property in the district is wholly inadequate both to carry on the school and provide such new building, and that the district by the voting of bonds, under the law, cannot issue such amount as to provide the same. It is then alleged that certain public-spirited citizens of the district are proposing to the board of trustees to erect within the district a suitable school building and rent from year to year the same to the board under a plan that will result in the district owning the building, if the board has authority to levy and collect taxes and the power to sell the present school site and buildings thereon.

Neither the answer nor the stipulation of facts elaborates upon the plan proposed by which the board is to rent and finally own the proposed building; but if the action of the board be governed and controlled by the principles enunciated in the cases of Overall v. City of

Madisonville, 125 Ky. 684, and Waller v. Georgetown Board of Education, 209 Ky. 726, there can be no objection to the sale of the present site and buildings, and the entering into such a scheme as was approved in the two mentioned cases.

Judgment affirmed.

Whole court sitting.