# Elkhorn Coal Company v. Wright et al.

(Decided June 11, 1929.)

E. C. O'REAR for appellant.

STEPHEN COMBS, JR., and MORGAN & HARVIE for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The appellant sought an injunction to prevent the collection of school taxes in the Seco-Millstone graded common school district in Letcher county which had been assessed against it for the year 1928. Its grounds, as stated in its petition, are that the graded school district was not properly organized, and that the trustees were therefore without any authority to impose the tax. The grounds alleged in the petition are: (1) That the Letcher county court was without jurisdiction to order an election for the establishment of the district until the fact was established that the petitioners for the election constituted 25 per cent. of the white legal voters and taxpayers of the territory to be affected; (2) that the election was held under the provisions of section 4464, Ky. Stats., then existing, and that there was not indorsed on the petition the approval of the county board of education, or the superintendent of county schools; (3) that the certificate of election does not show that the majority, or any number, of the qualified voters in the proposed district voted in favor of establishing the graded school district; (4) that the certificate of election certifying the result does not show that the election was held on March 26, 1921.

The proceedings to establish this graded school district were had in 1921. The school district was organized as we gather from the petition, and has existed since its establishment down to the present time. It is now attacked on the ground that the proceedings were irregular, or illegal.

The first ground of attack is that the record does not disclose that 25 per cent. of the white legal voters within the territory to be affected signed the petition, and that the county court, being a court of special jurisdiction, was without authority to consider the petition until it was first established that it was signed by 25 per cent. of the legal voters. The petition recites that it contains the signatures of more than 25 per cent. of the legal voters within the territory to be affected. Certainly that was sufficient to give the county court jurisdiction to hear and determine the matter presented, or at least to hear and determine the question whether 25 per cent. of the white legal voters within the territory affected had subscribed their names to the petition. Section 4464, Ky. Stats., as it then existed, does not provide any particular

method whereby the court may ascertain whether 25 per cent. of the white legal voters had signed a petition. Counsel for appellant relies on the case of Hopkins v. Dickens, 188 Ky. 368, 222 S. W. 101. The case throws no light on the question at all. It is true that opinion holds that the county court is without jurisdiction to fix the boundaries of a proposed graded common school district, or to order an election held therein until the county judge shall have received a petition signed by the number of persons, and with the qualifications, required, but there is not a word in the opinion about how the county judge shall ascertain the fact. In that case the question was whether a graded school district could embrace parts of two magisterial districts, and if so whether 25 per cent. of the voters residing within the territory to be affected in each magisterial district should be required to sign a petition, or whether only 25 per cent. of the voters residing in the territory that would be affected, regardless of the boundary lines of the magisterial districts. The facts were agreed upon. After the long lapse of time we will conclusively presume that the county judge did his duty when the petition was submitted and ascertained that 25 per cent. of the white legal voters had signed the petition before entering a judgment fixing the boundaries and calling the election. There seems to be no requirement as to any method to be followed by the county judge in ascertaining the particular fact, and he may have heard oral testimony, or he may have heard evidence by affidavits or even depositions so far as this record shows. We have the copy of the petition which appears regular in all respects and the judgment, or order, of the court fixing the boundaries and calling the election.

Another ground relied on in the petition is that the petition for the election did not contain indorsed on it the approval of the application to establish the district, in writing of the county board of education, or the county superintendent of schools. The copy filed with the petition in the first place did not contain these indorsements through an oversight of the county clerk in making the copies, but this error was corrected, and the exhibit as finally filed shows that there was an indorsement of approval by the county school superintendent and also by the county board of education. Counsel for appellant, however, argues that the approval of the county board of education was not sufficient because the name of

the county board of education appears to have been subscribed by the chairman without any record, or evidence, to show that the chairman had authority to act. The case of Owens v. Trustees McKinney Graded Common School District, 153 Ky. 723, 156 S. W. 877, is relied on. That case sheds no light on the matter. It does not relate to the question of the approval of the application by the county board of education, but the approval by trustees in common school districts. Some of the trustees had failed to approve the application, while others had written their names on the petition without any words indicating their approval. The court held that the approval of the trustees of the common school districts had not been obtained. Such is not the case here. The presumption is that the chairman of the county board of education had authority to sign its name. The county board of education is a body politic and corporate, and the approval of the application appears to have been through the signing of the name of the corporation by the chief executive officer. It does not appear to have been held by this court that a county board of education can speak only through its records. County Board of Education of Pulaski County v. Jasper, 193 Ky. 222, 235 S. W. 366.

Another ground relied on is that the certificate of election did not show that the majority, or any number of the qualified voters in the proposed district, voted in favor of establishing the graded common school district. The certificate of election commissioners is full and complete. It shows that the proposition to establish the district and impose a tax for the support of the school "was voted or carried, there being 75 votes for and no votes against the levying of said tax."

This court has never held that a majority of all the voters residing within district or municipality and entitled to vote must actually vote in order to carry a proposition to impose a tax. If 75 votes were cast in favor of the establishment of the district and the imposition of the maintenance tax, and none were cast against it, the election commissioners were correct in certifying that the proposition was voted or carried. We find no merit in this contention.

Another ground relied on is that the order calling the election fixes Saturday, March 26th, as the date on which the election shall be held, while the certificate of the board of election commissioners shows that they canvassed the returns of an election held March 22, 1926. The

point is not well taken. The commissioners showed, by the certificate, the returns which they canvassed, and the mere statement that the election was held on the 22d, when it was in fact held on the 26th, is a very slight irregularity. The petition prayed that the election be fixed for the 22d, but the order calling the election fixed it for the 26th and in making up the certificate the election commissioners made an error as to the day on which the election was held.

Where graded common school districts have been established and in operation for a long time, public policy is against declaring the original organization fatally defective unless there is some insuperable obstacle in the way. Gosney v. Butler Graded School, 219 Ky. 242, 292 S. W. 781. Considering the allegations of the petition with the exhibits made a part of it, we have reached the conclusion, as did the trial court below, that the petition stated no cause of action, and that the demurrer to the petition was properly sustained.

Judgment affirmed.