# Greenup County Board of Education et al. v.

## Savage et al.

(Decided June 12, 1934.)

J. D. ATKINSON for appellants.

DYSARD & TINSLEY for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The Greenup county board of education attacks the validity of the annexation by the Russell graded and high school district of that portion of the Bellefonte subdistrict lying in Greenup county, to which procedure it was a party, and the extension of the graded school limits to the low-water mark of the Ohio river on the north side. A taxpayer suing for himself and others similarly situated also filed a suit of the same character, and the two suits were consolidated.

The Bellefonte subdistrict, a part of the county school system, was partly in Greenup county and partly in Boyd county and adjoined the Russell graded school district on the east. In October, 1921, petitions were filed with the county board of education and the graded school board, signed by twenty-nine residents and patrons living in that portion of the subdistrict which was in Greenup county, requesting that it be transferred and annexed to the graded school district. Early in March, 1922, orders were entered by the respective boards extending the limits of the graded school district to in-

clude the same. The graded school board in its order then defined its boundary as being to the Ohio state line across the river. The extension of the graded school district by petition and approval of the two boards was authorized by chapter 24, sec. 136, of the Acts of 1916, as amended by chapter 100, p. 651, of the acts of the same session of the Legislature, and published as section 4464, 1922 Edition of the Kentucky Statutes. The grounds of attack are that the terms of the statute were not strictly complied with in several particulars, and that because of the absence of any petition there was no authority whatsoever for the extension across the river. It is also argued that chapter 46 of the Acts of 1920 (section 4433-b of the then Statutes), providing for an election for the consolidation of school districts, was the only way in which territory more distant than 2½ miles from the graded school property could be annexed. The graded school board maintained that the terms of the statute had been substantially and sufficiently complied with, and also that the original boundary of the district embraced the river to the low-water mark on the north side. In addition estoppel, laches, and the ten-year statute of limitation were pleaded in bar of the maintenance of the respective suits. The trial court was of the opinion that the defendants' contentions should be sustained and dismissed the petitions.

The added territory across the river embraces the Russell and Ironton bridge, a section of railroad yards, and the old Bellefonte district has within its boundary a very large industry. After the annexation, a commodious school building was erected in the community by the graded school board and many persons have built homes and settled there because of these improved educational facilities, which apparently could never have been supplied by the county board of education because of the lack of revenue. The bonded indebtedness of the graded school district was increased by $28,000 shortly after the annexation, and $22,000 of the proceeds were expended in the erection of the new building in the territory taken in. While it appears that there is a considerable sum in the sinking fund for the liquidation of the entire indebtedness and the net amount above that fund is less than the outstanding debt before the annexation, and that the security for those bonds would be ample, yet the facts cannot be ignored that the bonds

now owing are the obligations of the entire district and that the property in the annexed territory, including the bridge to the low-water mark upon the Ohio side, have been pledged as security for the new issue. The valuation of all that property was taken into consideration when the amount of the new issue of bonds was fixed and voted and the securities sold. A separation would impair the security of the outstanding bonds and deprive the graded school district of about $40,000 revenue annually. The bridge company, the railroad company, and the industry, which pay a greater part of the school taxes, are not raising any objection to the present situation.

We, therefore, have a case where the county school board actively participated in that which it now says was void, and where the board and the individual plaintiff, or perhaps his predecessor in ownership of property in the district, acquiesced in the situation for more than eleven years and permitted important rights of others to accrue and become vested before undertaking to annul the annexation. It is by no means certain that the basis for the extension was not good or the action illegal, but, passing over the merits of the claims of invalidity, we think the case should be determined upon equitable principles.

In Gosney v. Butler Graded School, 219 Ky. 242, 292 S. W. 781, the annexation of territory to a graded school district made pursuant to the result of an election which was void because the established statutory procedure had not been followed was assailed after the lapse of thirty-four years. For the reasons and upon the authorities set forth in the opinion, which need not be repeated, it was declared that the courts have the inherent power to deny their processes for disturbing such situations, and they would exercise that discretion and deny the relief sought when it was for the public good. In Elkhorn Coal Co. v. Wright, 230 Ky. 33, 18 S. W. (2d) 862, where the validity of the establishment of a graded school district was attacked after six or seven years, the conception was reiterated that where a school district has been established and in operation for a long time, public policy is against declaring the organization fatally defective unless there is some insuperable obstacle in the way. See, also, McDonald, School Treasurer, v. Parker, County Superintendent, 130 Ky. 501, 110 S. W. 810, 33 Ky. Law Rep. 805; State,

etc., v. Des Moines, 96 Iowa, 521, 65 N. W. 818, 31 L. R. A. 186, 59 Am. St. Rep. 381.

The Gosney Case was decided upon the broad principle of public policy, but it has been held by other courts that long acquiescence in the creation or alteration of a school district will estop one from questioning the legality of the proceedings, especially a school board which had participated in the change. Other cases rest the denial of relief upon laches. See 56 C. J. 252.

In Palmer v. Elizaville Graded Common School District, 235 Ky. 75, 29 S. W. (2d) 648, the graded school district had been extended to take in the territory of a county subdistrict, just as here. But it was done two years after the statute (section 4464, 1922 Edition) had been repealed. The annexation was questioned six years thereafter, and because there was at the time no semblance of authority for it—as distinguished from other cases as well as the one at bar, where there was actually or apparently only a defect in procedure—and because no rights of third parties had become vested and little, if any, disturbance would follow the restoration of the status quo, the attempted extension of the limits of the graded school was set aside. The other cases relied upon by the appellant on this branch of the case are distinguishable upon the facts, or the application of different statutes, or the absence of a radical or far-reaching effect ensuing from the vacation of the action assailed. Cases of such character are Hurley v. Motz, 151 Ky. 451, 152 S. W. 248, and Dean v. Board of Education of Harrodsburg, 247 Ky. 553, 57 S. W. (2d) 477.

We conclude that the court properly dismissed the petitions.

Wherefore the judgment is affirmed.